ᵈ

𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

NORFOLK AND WESTERN R. R. CO. v. SUTHERLAND.

March 9th, 1893.

COMMON CARRIERS—*Contract—Liability.*—The defendant company agreed to deliver cattle, from a point on its line to a point on the line of the Virginia Midland railway, to the latter company at Lynchburg; and plaintiff agreed to load, transfer, and unload them at his own cost. At Roanoke, a regular feeding-place for stock *in transitu*, necessary arrangements for unloading, feeding, and reloading were provided by the company, and there a mistake in reloading occurred, by defendant's default, whereby some of plaintiff's cattle were sent to another point and other cattle were mixed with his.

HELD:

The company was liable for the consequent loss.

Error to judgment of circuit court of Russell county, rendered March 18th, 1892, in an action of trespass on the case in *assumpsit*, wherein Elihu Sutherland was plaintiff and the Norfolk and Western Railroad Company was defendant. The judgment being adverse to defendant, it brought the case here on writ of error. Opinion states the case.

*Burns & Fulton*, for plaintiff in error.

*H. A. Routh*, for defendant in error.

LEWIS, P., delivered the opinion of the court.

This was an action for an alleged breach of a contract of the defendant company to carry for the plaintiff fourteen car-

loads of cattle, consigned to The Plains, a station on the Virginia Midland railway, in Fauquier county. Attached to the same train by which the plaintiff's cattle were shipped were several cars loaded with the cattle of one Finney, which were consigned to Warrenton. On the route the cattle of both shippers were unloaded, fed, and reloaded at Roanoke; and, after the train left Lynchburg, on the Midland road, it was discovered that one of Finney's cars, billed for Warrenton, had been reloaded with the plaintiff's cattle, and that one of the plaintiff's cars, for The Plains, had been reloaded with Finney's cattle.

Upon discovering the mistake, the plaintiff called the conductor's attention to it, and requested that it be corrected—that is, that the Finney car, containing the plaintiff's cattle, be sent to The Plains, and that the plaintiff's car, containing Finney's cattle, be sent to Warrenton; but the conductor replied that he had no authority to make the change. A similar request was afterwards made, and with the same result, when the train arrived at Warrenton Junction. And upon the arrival of the train at The Plains the plaintiff unloaded his cattle, and requested the agent of the Midland road not to unload and mingle the Finney cattle with them; but no attention was paid to the request, and all were unloaded together, just as was done at Warrenton.

In consequence of this intermingling of the cattle, the plaintiff sustained considerable damage, for which he obtained the verdict upon which the judgment complained of was entered.

Upon the shipment of the cattle two bills of lading were delivered by the defendant company to the plaintiff, and signed by him—one for five car-loads, shipped from Castlewood; the other for nine car-loads, shipped from Cleveland, stations on the defendant's road, in Russell county; the whole shipment being consigned to The Plains, *via* the Virginia

Midland railway. In each of the bills of lading the company contracts to transport the cattle to Lynchburg, and there to deliver them to the Midland Company, and in each the shipper (*i. e.*, the plaintiff) agrees to load, transfer, and unload them at his own cost. When the train arrived at Roanoke, an intermediate point on the way to Lynchburg, the agents of the company, of their own accord, took charge of the cattle, and unloaded, fed, and reloaded them, as already stated. They took absolute and exclusive charge, as the declaration states, although the plaintiff was himself present, and willing and ready to attend to the matter.

It appears that Roanoke is a regular " feeding-place " for cattle or stock *in transitu ;* that the defendant company provides the necessary pens and supplies for the purpose, and that the unloading, feeding, and reloading is done by the company's agents, " the shipper," as the defendant's own evidence shows, " having nothing to do with the matter." It appears, moreover, that the plaintiff's witness, Gray, cautioned the agent in charge of the pens at Roanoke not to get the cattle mixed, who curtly replied that he understood his business. The cattle were reloaded between the hours of 7 and 9 o'clock in the evening on the 20th of October, and, .therefore, after dark.

The declaration avers that the mistake in the reloading occurred at Roanoke, although there was evidence for the defendant tending to show that it did not. The jury, however, evidently thought that it did. It certainly occurred before the cattle left Lynchburg, for none of Finney's cattle were shipped from either of the stations from which the plaintiff's cattle were shipped, and the irresistible inference from the record is that it occurred before the cars containing the cattle were delivered to the Midland Company. The plaintiff testified that the train arrived at Lynchburg about daylight the morning after leaving Roanoke, and that upon its arrival

VOL. LXXXIX—89

there he left the caboose, in which he had been riding, and went to the Relay House for breakfast; that he saw nothing more of the train until about an hour and a half afterwards, when it was placed on the track of the Midland road, ready to start; and it is certain no change was made between Lynchburg and the point at which the mistake was first discovered. The jury were, therefore, warranted in finding that the mistake was made by the defendant company, and without fault or contributory negligence on the part of the plaintiff.

Nor did the court err in refusing to set aside the verdict. The mistake having occurred while the cattle were in the defendant's charge, the company is liable for the consequent loss, for it is not pretended—or, at all events, it is not shown—that the Midland Company was in fault. It merely did what, under its contract with the defendant company, it was bound to do.

This view is not in conflict with the rule that a carrier who accepts anything for transportation beyond the terminus of his own line is liable only to the extent of his own line, and for the safe delivery to the next carrier. *Railroad Co.* v. *Manufacturing Co.*, 16 Wall. 318; *Myrick* v. *Michigan Central R. R. Co.*, 107 U. S. 102; *McConnell* v. *N. & W. R. R. Co.*, 86 Va. 248. It may be remarked, however, that we now have a statute which enacts that the liability of the carrier in such a case shall extend to the point of ultimate destination, unless there is a contract in writing to the contrary, signed by the owner or his agent, at the time the thing is accepted for transportation; and that, even where there is such a contract, the carrier shall be liable for the whole route, in case the thing is lost or injured, " unless, within a reasonable time after demand made, he shall give satisfactory proof to the consignor that the loss or injury did not occur while the thing was in his charge." Code, § 1295.

In the present case the plaintiff signed the contracts evidenced by the bills of lading, but the case is not within the operation of the latter provision of the statute, as the cattle were not lost or injured while in the defendant's charge. The defendant company, however, is liable, on general principles, for the loss which afterwards occurred, because it was caused by its own negligent act, committed before the cattle were delivered to the connecting carrier.

As to the amount of the damage sustained, the only evidence was that submitted by the plaintiff. He himself testified that he was unable for several days to separate the cattle after they had been unloaded and mingled with Finney's, and that, in consequence of "holding them up" until the separation could be made, there was a loss of about 100 pounds per head, which was equivalent, he says, to a loss of $3.50 per head. He was, besides, put to considerable expense in the matter. The jury found a verdict for $740, and there is nothing in the record to show that this finding was excessive.

At the trial the court gave a number of instructions to the jury at the instance of the plaintiff, and refused to give several offered by the defendant. It would greatly extend this opinion to consider these instructions *seriatim*, nor is it necessary to do so. It is enough to say that the case was submitted to the jury in substantial conformity with the views expressed in this opinion. At all events, there was no error in regard to the instructions for which the judgment ought to be reversed; and the same may be said in regard to all the rulings of the trial judge.

JUDGMENT AFFIRMED.