CHARLES C. WHITNACK, APPELLEE, v. CHICAGO, BURLINGTON & QUINCY RAILWAY COMPANY, APPELLANT.

FILED OCTOBER 22, 1908. No. 15,261.

1. **Parol Evidence: CONTRACT IN WRITING: BILL OF LADING.** When a bill of lading has been issued by a common carrier, and signed and accepted by the shipper, it constitutes the contract for the shipment of merchandise therein described, and its terms cannot be altered or varied by parol testimony.

2. **Contracts: BILL OF LADING: CONSTRUCTION.** The language used in a bill of lading is subject to the same rules of construction which

govern other contracts, and, while the instrument is to be construed as a whole, invalid conditions will not necessarily render the contract invalid, and it may be enforced so far as it is valid.

3. Carriers: LIABILITY. Where a common carrier accepts goods for shipment to be delivered to a connecting carrier, the first carrier will be liable for any damages to the goods resulting directly from the negligence of such carrier, although the loss may not actually occur until after the goods are, delivered to the second carrier.

4. ————: ————. A common carrier undertook during extreme cold weather to carry two car-loads of potatoes and deliver them to a connecting carrier. The contract provided that the shipper should furnish a caretaker to accompany the shipment and keep fires in the car to prevent the potatoes from freezing. The carrier separated the two cars while they were in transit and on its lines of railway, so that the caretaker was prevented from attending to one car of the potatoes, and they were thereby permitted to freeze. *Held*, That the first carrier was liable, even though the potatoes may not have frozen until after they were delivered to the second carrier.

5. ————: NEGLIGENCE: BURDEN OF PROOF. Where a common carrier's contract contemplates keeping two car-loads of merchandise together in charge of a caretaker, and it separates the two cars, so that the caretaker is prevented from attending to one of them, and loss thereby ensues, the burden of proof is upon the carrier to prove that there was sufficient cause for separating the two cars. The fact of the separation of the two cars under the circumstances imports negligence.

APPEAL from the district court for Lancaster county: LINCOLN FROST, JUDGE. Affirmed.

J. E. Kelby, Frank E. Bishop, Fred M. Deweese and Arthur R. Wells, for appellant.

George W. Berge and Morning & Ledwith, contra.

GOOD, C.

The plaintiff, Charles C. Whitnack, recovered a judgment against the defendant railway company for damages to a shipment of potatoes while in transit from Omaha,

Nebraska, to Fort Worth, Texas, alleged to have been sustained by reason of defendant's negligence. The defendant has brought the case to this court on appeal.

In February, 1905, plaintiff shipped from Omaha, over defendant's line of railway, two car-loads of potatoes consigned to himself at Fort Worth, Texas. Defendant's line of railway extended no further than Kansas City, Missouri, and from that point the potatoes were to be carried over the line of the Missouri, Kansas & Texas Railroad. The weather was very cold, and, to prevent the potatoes from freezing, it was arranged that a caretaker should accompany the shipment and keep a fire in each of the cars. The potatoes, which were in bags, were so placed in the cars as to leave an open or vacant space in the center of each car. In these vacant spaces oil stoves were placed and lighted to keep the cars warm. A. C. Brown was employed by the plaintiff as caretaker to accompany the potatoes, and to attend to the stoves and see that they were kept filled and burning. The potatoes in charge of Mr. Brown reached St. Joseph, Missouri, in good condition. At this point the train was stopped for some time. Mr. Brown refilled the stoves and adjusted the wicks preparatory to continuing the journey. As the train was leaving St. Joseph, Brown discovered that one of the cars was missing from the train. He made inquiries of the train crew; but received no information as to the missing car. The train was in motion, and he was informed that, if he was going on that train, he must get aboard. He got aboard the train, and proceeded on the journey with but one car. The other car, having been cut out of the train at St. Joseph, was left behind. Brown reached Fort Worth with the one car of potatoes in good condition. The other car-load of potatoes, with which we have to deal in this case, reached their destination several days later badly frozen and wholly worthless.

The plaintiff contends that the contract for the transportation of the potatoes was for a through shipment, while the defendant contends that the contract of the

defendant was to carry the potatoes to Kansas City and turn them over to the connecting carrier. The only act of negligence pleaded by the plaintiff was that the defendant negligently separated the cars at St. Joseph, whereby the caretaker was prevented from taking care of the potatoes in the car that was left at St. Joseph, and that, by reason of that negligence, the potatoes were permitted to freeze. The evidence shows that the car-load of potatoes, after being detained at St. Joseph for a few hours, was carried to Kansas City and turned over to the connecting carrier from 12 to 15 hours after the fires had been attended to at St. Joseph. Defendant contends that the freezing of the potatoes did not occur while on its lines or in its possession, and contends that the potatoes froze after they were delivered to the connecting carrier, and that under the contract of shipment, which will be referred to hereafter, the defendant was not liable for the loss sustained. Defendant relies upon the bill of lading as the contract of shipment, while the plaintiff contends that the contract for the shipment was oral, and that he is not bound by the provisions contained in the bill of lading. The evidence shows that on the day previous to the loading of the potatoes for shipment plaintiff arranged with the defendant for their transportation to Fort Worth. At this time it was arranged that the potatoes should be loaded the next day by A. C. Brown, who would accompany the potatoes as the agent of the plaintiff. The freight rate, the kind of cars to be furnished, and the route were agreed upon. Plaintiff further admits that he understood and knew that a written contract or bill of lading was to be executed, and that he authorized Brown, as his agent, to ship the potatoes and sign such a contract. Brown also testified that he was authorized to, and did, sign the bill of lading. The greater part of this instrument is printed matter, and it clearly shows that it was originally designed as a contract for the shipment of live stock. Most of its provisions relate to live stock shipments, and can have no application to a shipment of po-

tatoes.   There are other provisions of a general nature
which might apply to such merchandise as potatoes as
well as to live stock.   It is clear that many of the pro-
visions relating to the shipment of live stock must be dis-
regarded.   In the printed form, and following the words
"cars loaded with," occurs the word "potatoes."   The
names and numbers of the cars are written in their ap-
propriate places.   This contract was used by Brown to
secure his free passage as caretaker on the train.

The question is:  Does the bill of lading constitute the
contract of shipment, or may the plaintiff rely upon the
prior oral agreement which preceded the making of the
written contract?   No doubt exists that an oral contract
for the transportation of freight would be valid, but the
question is not whether an oral contract would be valid,
but whether a written contract was made.   That such a
one was made is beyond question.   May a written contract
be disregarded and set aside when it contains many pro-
visions which cannot be given effect because they are
wholly inapplicable to the subject matter of the contract?
The rule of law is general that, where a written contract
has been made between the parties, it cannot be altered or
contradicted by parol, and that all oral negotiations lead-
ing up to the making of the written contract are merged
therein, and this rule is applicable to bills of lading.   6
Cyc. 427.   It was clearly the intention of the parties that
there should be a written contract, and one was deliber-
ately made and entered into.   The fact that the contract
contains many provisions which cannot be given effect,
and which it is apparent were never intended to be given
effect, does not appear to be any sufficient reason for
holding the contract invalid, or to justify setting aside
and disregarding the provisions which are applicable to
the subject matter of the contract.   A bill of lading is an
instrument issued by a carrier to the consignor, consist-
ing of a receipt for the goods and an agreement to carry
them from the place of shipment to the place of destina-
tion.   6 Cyc. 417, and cases there cited.   The language

used in a bill of lading is subject to the same rules of construction which govern other contracts, and, while the instrument is to be construed as a whole, invalid conditions will not necessarily render the contract invalid, and it may be enforced so far as it is valid. *Grieve v. Illinois C. R. Co.,* 104 Ia. 659; 6 Cyc. 418.

The bill of lading in the case at bar contains the following provisions: "Nor shall said railway company be liable for loss or damage after delivery to any connecting line, nor for any loss or damage not incurred upon its own line." The defendant contends that the evidence shows that the loss or damage complained of occurred after the delivery of the potatoes to the Missouri, Kansas & Texas Railway Company at Kansas City, and that, under the provisions of the contract above quoted, it is not liable to the plaintiff in this case. The evidence shows that the oil stoves used to keep the potatoes warm would ordinarily burn about 12 hours, and the evidence shows that the stove in the car that was left at St. Joseph was filled and lighted about 12 or 14 hours previous to its being turned over to the connecting carrier at Kansas City. The defendant argues that the presumption is that the stove continued to burn and keep the car warm, and that the potatoes were not frozen while in its possession. The evidence also shows that the potatoes remained in the yards of the connecting carrier at Kansas City for several days, and that the car when received by it at Kansas City was in bad condition; that several of the boards constituting one end of the car were broken, thus exposing the interior of the car to the cold air. The weather was shown to have been extremely cold during the time the potatoes were in the yards of the connecting carrier at Kansas City. It is not clearly shown from the record when the potatoes froze, whether they suffered from the cold prior to the time they were delivered to the connecting carrier or afterwards. We do not think, however, that this is material.

The rule both at common law and in this state is that a

common carrier is not liable for the negligence or default of the connecting carrier in the absence of a contract making it liable therefor. *Fremont, E. & M. V. R. Co. v. New York, C. & St. L. R. Co.*, 66 Neb. 159. But this rule does not relieve the initial carrier from liability on account of its own negligence. The first carrier may by its own negligence in dealing with the goods render itself liable to the shipper, even though the actual loss resulting is not apparent until the goods are in the possession of the second carrier. The real question is: Did the loss occur as the direct result of the negligence of the initial carrier? If so, then its negligence was the proximate cause, and it would be liable. *Selma & M. R. Co. v. Butts & Foster*, 43 Ala. 385, 94 Am. Dec. 694; *Norfolk & W. R. Co. v. Sutherland*, 89 Va. 703; *Fox v. Boston & M. R. Co.*, 148 Mass. 220. Under our constitution, as interpreted by this court, a railroad company cannot by contract with the shipper limit its liability as a common carrier, nor may it by contract relieve itself from the consequences of its negligence as a common carrier. *Missouri P. R. Co. v. Vandeventer*, 26 Neb. 222; *St. Joseph & G. I. R. Co. v. Palmer*, 38 Neb. 463. In the instant case it may be admitted, for sake of argument, that the potatoes did not freeze until after they were delivered to the connecting carrier at Kansas City. But this would not relieve the defendant from liability if its negligence was the proximate cause of the freezing of the potatoes. The contract of shipment bound the defendant, not only to deliver the potatoes to the connecting carrier, but to deliver them with a caretaker in charge. In this defendant failed. By its act in separating the two cars it made it impossible for the caretaker to remain in charge of both cars. The caretaker could not maintain the fires in the car left behind, and thereby the potatoes in that car were permitted to freeze. This was sufficient to justify the jury in finding that the loss was sustained in consequence of defendant's negligence.

Defendant urges that the record is silent as to what

cause the defendant may have had for separating the cars, and, as there may have been a sufficient cause, that negligence is not proved by showing the mere separation of the cars. The cars were in good condition when started from Omaha. It was contemplated by the contract that the two cars should be kept together. If any fact existed which would justify defendant in separating the cars, we think it was its duty to notify the caretaker. At any rate, we do not think plaintiff should be required to prove absence of any act that would be a justification. Such a rule would be harsh and unreasonable, and would practically result in a denial of justice.

The trial court instructed the jury, in effect, that if one suffers damage as the proximate result of the concurrent negligence of two other parties, and if the damage would not have occurred from the negligent act alone of either party, then both would be liable to the party injured. Defendant assails this instruction which submitted the question of concurrent liability, because no concurrent negligence of the defendant and the connecting carrier was pleaded. It is apparent from the pleadings and the evidence that the defendant attempted to shift the responsibility for the damage to the connecting carrier, and it was doubtless to meet this phase of the case that the instruction was given. We think it is immaterial that the plaintiff did not plead concurrent negligence on the part of the connecting carrier, nor is it necessary for us to determine whether the evidence disclosed any negligence upon the part of the connecting carrier. The instruction placed no greater burden upon the defendant than the law required. Under this evidence the defendant could not be held liable unless it was negligent, and then only in the event that the loss would not have occurred except for the negligence of the defendant. The instruction as an abstract proposition of law appears to be sound, and we are unable to perceive wherein it was prejudicial to the defendant, and, in view of the defendant's attempt to shift the responsi-

bility for the loss to the connecting carrier, we think the instruction was properly given.

Defendant has criticised the rulings of the trial court in the giving and the refusal of several other instructions, but the question of the correctness of these rulings is disposed of by the foregoing discussion, and it is not necessary to further refer to them.

We fail to discover any prejudicial error in the record, and therefore recommend that the judgment of the district court be affirmed.

DUFFIE and EPPERSON, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.