R. I. BILBY, Respondent, v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, November 2, 1914.

1. **DAMAGES: Carriers of Live Stock: Failure to Water.** The plaintiff sued to recover damages for the negligence of the defendant in not providing proper watering facilities for a shipment of 257 head of hogs. Defendant failed to give them proper waterings en route, and provided no adequate means for watering at the end of the journey, although its agent had often been requested to do so. The plaintiff after unloading the hogs was compelled to drive them three miles to water, and as a consequence suffered the loss for which he sued. *Held,* that where the negligent cause of loss, or damage, to a shipment of live stock began to operate before the end of the transportation the carrier will be liable without regard to the time when the effect developed.

2. ————: ————: ————. If the cause of a loss occurring after their deliverey to the owner began to operate while they

Bilby v. Railroad.

were in the carrier's possession and is a cause for which it is responsible, the carrier will be liable without regard to the time when the effect developed.

3. INSTRUCTIONS: Proximate Cause of Injury. It is not error in an instruction to predicate the right to recover on the hypothesis that negligence in failing to provide water at the pens was a proximate cause of the injury, since the loss could not have occurred without such negligence.

Appeal from Nodaway Circuit Court.—*Hon. Wm. C. Ellison,* Judge.

AFFIRMED.

*Shinabarger, Blagg & Ellison* and *M. G. Roberts* for appellant.

A shipper has no right to designate the time when or the places where the trains should be stopped and he be allowed to feed and water. This of necessity must be left to the decision of defendant. Lowenstein and Thomas v. Railroad, 63 Mo. App. 76, citing McAllister v. Railroad, 74 Mo. 351.

*G. P. Wright* and *M. E. Ford* for respondent.

(1) It is the duty of a carrier to provide facilities for caring for live stock at their destination until the consignee can have a reasonable time in which to receive and remove them. 5 Am. & Eng. Enc. of Law, 431; Railroad v. York, 2 Tex. App. (Civil Cas. Sec. 812); Comer et al. v. Stewart et al., 97 Ga. 403. (2) If stock die after delivery, but from a cause which began to operate before delivery, the carrier is liable. 5 Am. Eng. Enc. of Law, 446; Dunn v. Railroad, 68 Mo. 268. (3) What constitutes delivery in any case depends on the surrounding circumstances and is therefore a question of fact. 5 Am. & Eng. Enc. of Law, 191. (4) Therefore, if the appellant desired the jury instructed on the question of delivery, an instruction

should have been offered. Wilson v. Railroad, 122 Mo. App. 672.

JOHNSON, J.—Plaintiff sued defendant in a justice court in Nodaway county to recover damages sustained in consequence of negligence of defendant in and about the transportation of 257 head of hogs from West Plains in Howell county to Quitman, a station on defendant's railroad in Nodaway county. The transportation was in the latter part of May, 1911, while the weather was very warm and it is alleged in the statement filed in the justice court that thirteen of the hogs died and the others were injured on account of the negligent failure of the carrier to give them sufficient water during the transportation and to provide proper facilities for watering them after they arrived at Quitman and were unloaded into the carrier's stock pens. The precise charge of negligence in the statement is "that while said hogs were in the care and custody of the defendant, said defendant, through its agents, servants and employees, negligently and carelessly failed, neglected and refused to water and care for said hogs and negligently and carelessly failed, neglected and refused to provide and furnish any water or to provide any well or pump or any means whereby the plaintiff could water and care for his said hogs, that by reason thereof the said hogs were in a famished and dying condition at the time they were taken from said stock pens by the plaintiff," etc.

Plaintiff recovered judgment in the circuit court where the cause was tried on appeal and defendant appealed.

There is but little controversy over the material facts of the case. The hogs, occupying two cars were carried from West Plains to Kansas City by the St. Louis and San Francisco Railroad Company and delivered to defendant which carried them on to Quit-

man, a distance of more than one hundred miles from Kansas City. The line of the initial carrier between West Plains and Kansas City makes a detour in Kansas and pursuant to the twenty-eight hours rule of the national interstate commerce laws, the hogs were unloaded at Olathe, Kansas, for feed, water and rest. From Olathe on to Quitman, a distance of about one hundred and fifty miles, the hogs were frequently drenched with water in the cars but were given no water to drink except what they could lick up from the floor. They arrived and were unloaded at Quitman about one o'clock in the afternoon, undamaged, but hot and thirsty. Plaintiff and his assistants were there to receive them. The stock pens were in a low, hot place, and the hogs immediately began to suffer from heat and thirst. Defendant had a well at the station but the pump was out of order and plaintiff, unable to procure water for the hogs and fearing they would die if left in the pens during the afternoon, proceeded to drive them to one of his farms three miles away. After they had traveled a mile or more the hogs, in the utmost distress, piled up in wayside ditches and thirteen died. The others, when they reached the farm were much injured by their sufferings. Plaintiff states that he had complained, at times, to the station agent of the lack of water at the stock pens and that the agent had promised to have the well put in proper condition for use.

Plaintiff took charge of the hogs when they were unloaded from the cars into the pens and it is the contention of defendant that delivery was made to him at that time and that no cause of action inured to him from the damages subsequently caused by the failure of defendant to provide suitable facilities for watering the hogs in the pens. Further counsel for defendant insist that plaintiff's own negligence in not watering the hogs at a river a quater of a mile from the stock pens and crossed by the highway over which the

hogs were driven, was the proximate cause of the injury. The river at this place was on land of plaintiff and is spanned by a bridge over which the hogs were driven.

The reason plaintiff and his witnesses gave in their testimony for not watering the hogs there was that it would have been impracticable, owing to the character of the banks and the surrounding vegetation which would have caused the loss of many of the animals had an attempt been made to water them there.

In the first instruction given at the request of plaintiff the jury were told "that if you find and believe from the evidence that on or about the — day of May, 1911, the plaintiff, Bilby, shipped two carloads of hogs over the defendant's railroad to Quitman, Missouri, and that said hogs were unloaded at that station and placed in defendant's stockyards; that the facilities for watering stock at said stockyards were so defective and insufficient that plaintiff was unable, by the exercise of reasonable efforts, to water said hogs, and that plaintiff used due care, caution and diligence in caring for said hogs and procured water for them from other sources, as soon as he could; that as a direct result of plaintiff's inability to get water for the hogs at defendant's stockyards some of the hogs perished and others depreciated in value and that the death of said hogs and the depreciation in value would not have occurred had the facilities for watering been such that the hogs could have been watered before leaving the defendant's stockyards and that the said loss to plaintiff was caused by the defective and insufficient condition of defendant's watering facilities at said stockyards, and, if you further find that defendant's agents in charge of the station and yards knew of the condition of said well and watering facilities, or (by the exercise of reasonable care) might have known of it, for a sufficient length of time prior to the arrival of plaintiff's hogs to have enabled them in the exercise of rea-

sonable diligence, to have had the watering facilities in a reasonably good condition, then the finding should be for plaintiff, provided the jury further believe from the evidence that in the conditions and surroundings defendant, in the exercise of reasonable diligence, might have obtained a reasonably good supply of water and have provided reasonably good watering facilities.''

The court on its own motion instructed the jury: ''If the jury find from the evidence that any of the hogs died or shrunk in weight because of careless or negligent driving of them by plaintiff, or his agents, or because of his failure to supply them with water when he might have done so by the exercise of the care and diligence of a reasonably prudent person in like situation or circumstances, then as to such hogs the jury should not allow or award to plaintiff any damages.

If, under the circumstances revealed by the testimony, the jury believe that plaintiff, in removing or driving the hogs from the stockyards at the time, and in the manner disclosed by the evidence, acted carelessly or imprudently and not with that degree of care which a prudent person in like circumstances, would have exercised, and if the shrinkage in weight or death of any of the hogs, or both, was the result of plaintiff's said conduct, then plaintiff is not entitled to damage for injury to the hogs so resulting.''

The errors assigned in the brief of defendant are, first, that the court erred in overruling its demurrer to the evidence and, second, that the first instruction of plaintiff is erroneous, for the reason that ''it does not predicate a recovery on the allegation of the petition that the live stock were in the custody of the defendant and assumes that there was a duty to feed and water the hogs regardless of whether they had been delivered to plaintiff and accepted by him.''

The two main points advanced in support of the demurrer to the evidence are that no actionable negli-

gence of defendant is shown, and that the proximate cause of plaintiff's loss was his own negligence. Speaking first of the latter point, we think the court, in the instruction given on its own motion, properly submitted to the jury as an issue of fact, the question of whether or not plaintiff exercised reasonable care in driving the hogs on a hot afternoon, instead of leaving them in the pens without water until night, and in driving them to the farm without water in preference to the risk of loss which his evidence shows he had good reason to anticipate would result had he attempted to water them at the river. We do not feel warranted in declaring as a matter of law that plaintiff, who has had extensive experience in the handling and care of live stock and who was confronted with the problem of choosing between two evils, made not only an injudicious but a culpable choice.

Passing to the issue of defendant's negligence, we agree with counsel for defendant that delivery of the hogs to plaintiff occurred when they were unloaded from the cars and placed in the custody and under the control of plaintiff. [Ratliff v. Railroad, 118 Mo. App. l. c. 658.] And further we sanction the view that ordinarily where the carrier delivers the property in good order to the consignee at the place of delivery it is relieved from further liability as a common carrier. [6 Cyc. 469.] But in the transportation of live stock, the liability of the carrier is not restricted to losses occurring during the time the stock is in its possession. "If the cause of a loss occurring after their delivery to the owner is a cause which began to operate while they were in the carrier's possession and is a cause for which it is responsible, it will be liable without regard to the time when the effects developed." [5 Am. & Eng. Ency. of Law (2 Ed.), 446.] Live animals in transportation, especially hogs transported in hot weather, are perishable and require care and attention to preserve them from injury and it was the duty

of defendant to provide proper facilities and means for the reasonable prevention of injury from overheating and thirst.

"The carrier, in addition to affording live stock food, water and rest, is bound to take all such other precautions for their safe transportation as reasonable prudence would suggest . . . where hogs are being carried and are in danger of becoming overheated, the carrier must throw water on them to prevent the danger." [6 Cyc. 437.] And in addition to throwing water on the hogs at reasonable intervals it was the duty of defendant to give them water to drink to prevent injury from thirst. The hogs were given no drink after they left Olathe, were kept in the cars ten or twelve hours and were unloaded in the middle of a hot day at a place where defendant had negligently failed to keep a sufficient supply of water and, therefore under conditions that rendered it unsafe either to keep them in the stock pens until nightfall or to drive them to a place where they could be refreshed.

The duty of a carrier to provide suitable facilities for the care of live stock at its stations (Dunn v. Railway, 68 Mo. 628) was negligently violated by defendant in allowing its well at Quitman to become and remain useless. The evidence of plaintiff tends to show that the proximate cause of the injury was the co-operation of the negligent acts of failing to water the hogs *en route* and of failing to provide facilities for watering them after they were unloaded. It is true no injury had been sustained at the time of delivery and no loss would have occurred had plaintiff been able to procure water from the well. Neither act of negligence of itself would have produced the injury but together they were the proximate cause and the case falls under the rule that where the negligent cause began to operate before the end of the transportation the carrier will be liable without regard to the time when the effect developed.

The demurrer to the evidence was properly overruled.

The objection to plaintiff's instruction is not well taken.. In the views we have expressed the fact of whether the actual loss began before or after delivery is immaterial and it was not error in the instruction to predicate the right to recover· on the hypothesis that negligence in failing to provide water at the pens was a proximate cause of the injury, since the loss could not have occurred without such negligence.

The judgment is affirmed.

All concur.