TEXAS & P. RY. CO. v. McMILLEN et al.*
(No. 520.)

(Court of Civil Appeals of Texas.  El Paso.
Feb. 17, 1916.  Rehearing Denied
March 9, 1916.)

**1. CARRIERS ☞228 — CARRIAGE OF LIVE STOCK—ACTIONS—EVIDENCE.**

Testimony as to the condition of horses when received at their destination is admissible in an action for damages for rough handling and undue confinement against a railroad company, which carried the animals only part of their journey, and which limited its liability to carriage on its own line, for in such case the damages must be determined with reference to depreciation in value to the horses at point of destination.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 957-960; Dec. Dig. ☞228.]

**2. CARRIERS ☞219 — CARRIAGE OF LIVE STOCK—ACTIONS—DAMAGES.**

In such case, though the defendant railroad company limited its liability to damages occurring on its own line, and though the shipment was an interstate one, it was liable for damages caused by its negligence, though such damages did not develop until after the animals were delivered to the connecting carrier.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 950, 951; Dec. Dig. ☞219.]

**3. CARRIERS ☞228 — CARRIAGE OF LIVE STOCK—ACTIONS—EVIDENCE.**

In such case, evidence that the shipment had a good run after being delivered by defendant to the connecting carrier is admissible, tending to show that the loss occurred while the horses were in defendant's custody.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 957-960; Dec. Dig. ☞228.]

**4. CARRIERS ☞228 — CARRIAGE OF LIVE STOCK—ACTIONS—EVIDENCE.**

In an action for damages for injuries to a shipment of live stock conveyed in several cars, where the animals, after delivery to destination, were commingled and the condition of all was about the same evidence of the condition of animals in a car as to which no written notice of damages was served, though such notice was a condition precedent to recovery, is admissible to show the condition of the animals in the other cars.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 957-960; Dec. Dig. ☞228.]

**5. APPEAL AND ERROR ☞882(8)—WAIVER OF ERRORS—EVIDENCE.**

Where appellant's own witness testified as to the condition of the animals in the car, as to which no notice was filed, any error in receiving such evidence was waived.

[Ed. Note.—For other cases, see Appeal and Error. Cent. Dig. §§ 3597, 3598; Dec. Dig. ☞882(8).]

**6. APPEAL AND ERROR ☞1053 — REVIEW — HARMLESS ERROR—EVIDENCE—CURE BY INSTRUCTIONS.**

Where the jury were expressly instructed not to award damages for injuries to the animals in the car as to which no notice of damages was filed, any error in receiving such evidence was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4178-4184; Dec. Dig. ☞1053.]

**7. CARRIERS ☞228 — CARRIAGE OF LIVE STOCK—ACTIONS—MARKET VALUE.**

In an action for injuries to a shipment of horses, evidence of their actual value at the point of destination is admissible, where it did not appear that they had any market value at such point.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 957-960; Dec. Dig. ☞228.]

**8. APPEAL AND ERROR ☞1050 — REVIEW — HARMLESS ERROR.**

Where the actual value of horses injured in transit was the same as their market value at destination, the erroneous receipt of evidence of their actual value was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153-4157, 4166; Dec. Dig. ☞1050.]

**9. LIMITATION OF ACTIONS ☞21—SHIPMENT OF LIVE STOCK—RUNNING OF STATUTE.**

The four, instead of the two, years' statute of limitations applies to an action for injuries to a shipment of horses in transit.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 90-99; Dec. Dig. ☞21.]

**10. CARRIERS ☞218 — CARRIAGE OF LIVE STOCK—NOTICE OF CLAIM.**

Where a bill of lading required the shippers to serve notice of claim for injuries to live stock, the consignee, though he was part owner of the animals and joined in an action to recover for damages, need not serve such notice; it having been served by the shipper.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 674-696, 927, 928, 933-949; Dec. Dig. ☞218.]

**11. CARRIERS ☞218 — CARRIAGE OF LIVE STOCK—ACTIONS—NOTICE.**

Where a contract for the shipment of live stock required the shipper, as a condition precedent to any right of action for loss or injury to the animals, to serve written notice, setting out in detail a full statement of losses or injuries and the amount thereof, which was for the avowed purpose of enabling the carrier to investigate and settle such claim before suit, the shipper may, in an action for injuries to live stock, recover damages in excess of the amount claimed in the notice; the notice being merely to afford the carrier an opportunity to investigate.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 674-696, 927, 928, 933-949; Dec. Dig. ☞218.]

**12. CARRIERS ☞211 — CARRIAGE OF LIVE STOCK—CONFINEMENT OF ANIMALS.**

The federal acts, declaring that, save under specified circumstances, a shipment of live stock shall not be confined to the cars for more than 28 consecutive hours, did not abrogate the duty of the common carrier to feed, water, and rest the animals as reasonable necessity might require, but merely provided a maxim beyond which stock could not be confined; therefore a carrier cannot justify its act, in confining stock without food and water for an unreasonable period of time, on the ground that it was within the maxim prescribed by statute.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 926-928; Dec. Dig. ☞211.]

Appeal from District Court, El Paso County; Ballard Coldwell, Judge.

Action by E. D. McMillen and another against the Texas & Pacific Railway Company. From a judgment for plaintiffs, defendant appeals. Affirmed.

Russell & Gillett, of El Paso, and R. S. Thompson, of Dallas, for appellant. Jno. L. Dyer, C. W. Croom, and A. R. Grambling, all of El Paso, and R. P. Barnes, of Albuquerque, N. M., for appellees.

HIGGINS, J. Appellees brought this suit against appellant to recover damages to four carloads of horses, shipped from Silver City, N. M.. to Live Oaks, Fla., via El Paso, Tex., and New Orleans, La. The shipment moved from Silver City to El Paso over the line of the Atchison, Topeka & Santa Fé Railway Company; thence to New Orleans over the line of appellant; thence over the Seaboard Air Line to Live Oaks. The shipment moved from El Paso to Live Oaks under a separate contract issued by appellant, whereby it agreed to transport the shipment from El Paso to New Orleans, en route to Live Oaks, and which limited its liability to its line of railway, and provided that its part of the contract would be fully performed upon delivery or tender to its next connecting carrier. It was alleged that the shipment was handled roughly by defendant between the stations of Boyce and New Orleans in Louisiana, in consequence whereof the animals were injured; that defendant confined the animals in cars for more than 28 hours without unloading for rest, water, and feed, in consequence whereof they were injured; that in consequence of the injuries so received, from rough handling and confinement for more than 28 hours, 50 of the grown animals and 13 colts died in transit, or when delivered at Fair Oaks, or within a short time thereafter, and 66 head were delivered by the connecting carrier at Fair Oaks in a weakened, emaciated, bruised, and wounded condition. Recovery was sought only of damages alleged to have resulted to the animals by reason of the rough handling while in appellant's possession and the confinement of them by it in cars for more than 28 hours. The charge of the court so limited the recovery.

[1] Error is first assigned to the admission of testimony showing the condition of the animals upon delivery at Live Oaks by the Seaboard Air Line. The evidence was properly admitted. The contract under which the shipment was made showed its ultimate destination to be Live Oaks, and the measure of damage was controlled by the condition and value of same upon delivery at Live Oaks. The evidence was proper for the purpose of determining the measure and extent of the damage. If goods are marked and known to the carrier to be destined to a point beyond the terminus of its route, and such carrier becomes liable for a loss thereof or damage thereto, the damages will be estimated with reference to the market value at the ultimate destination. 3 Sutherland on Damages (3d Ed.) §§ 918, 932; Railway Co. v. Webb, 20 Tex. Civ. App. 431, 49 S. W. 530; Railway Co. v. Cunningham, 51 Tex. Civ. App. 368, 113 S. W. 768; Railway Co. v. White, 35 Tex. Civ. App. 521, 80 S. W. 641; Railway Co. v. Stanley, 89 Tex. 43, 33 S. W. 109; Railway Co. v. McCarty, 82 Tex. 608, 18 S. W. 716.

[2] Appellant having accepted the shipment to be delivered to its connecting carrier at New Orleans for transportation, thence to Live Oaks, it became liable for any damages proximately resulting from its negligence, although the loss may not have developed until after the goods were delivered to the connecting carrier, and this is true although the contract between the consignor and the initial carrier provides that such carrier shall be responsible only for losses or injuries occurring on its own lines, and shall be relieved from liability of every kind after the property transported by it has left its line. Railway Co. v. Herring, 24 S. W. 940; Railway Co. v. White, 35 Tex. Civ. App. 521, 80 S. W. 641; Bilby v. Railway Co., 184 Mo. App. 644, 171 S. W. 41; Whitnack v. Railway Co., 82 Neb. 464, 118 N. W. 67, 19 L. R. A. (N. S.) 1011, 130 Am. St. Rep. 692; 4 Ruling Case Law, 832.

The admissibility of the testimony for this purpose is not affected by the fact that it is an interstate shipment, and the contract limited defendant's liability to damages occurring upon its own line. The damages in question did occur upon appellant's line, and it is liable therefor. It does not occur to us, that its liability in this respect would be, in any wise, affected by the fact if it was, as appellant contends, an intermediate carrier. However this may be, it appears that the shipment to El Paso from Silver City was an independent transaction, and upon a distinct and separate contract, and under the contract by which the shipment moved from El Paso to Live Oaks, the appellant was the initial carrier, as is shown by the statement of the contract as above made. What is said above disposes likewise of the fifth and ninth assignments.

[3] Under the third assignment, complaint is made of the admission of testimony, showing that the shipment had a good run between New Orleans and Live Oaks. In this there was no error. The evidence showing that the horses were transported only on the lines of the railway belonging to the defendant, from El Paso to New Orleans, and from New Orleans to Live Oaks, Fla., over the Seaboard Air Line, and plaintiffs having predicated the cause of action on account of the negligence of the defendant operating its train beyond Boyce, La., and New Orleans, La., in order to prove that the injuries of said horses were proximately due to the negligence of the defendant while the shipment was in its possession, it was proper to prove that the only other carrier handling the shipment exercised due care and handled same without negligence.

[4] Error is also assigned to the introduction of evidence showing the condition of the animals in Texas & Pacific car No. 5339. The bill of lading covering the shipment contained a clause requiring written notice of any claim for damage to be given in 120

days. No such notice was given as to car No. 5339, and for this reason a demurrer was sustained as to that portion of the petition seeking recovery of damages to the animals in this car. While it is true the court sustained a demurrer to plaintiff's petition seeking to recover damages for the injuries to the horses and colts in the Texas & Pacific car No. 5339, yet the evidence showed this car, together with three other cars, was transported by the defendant from El Paso, Tex., to Addis, La.; that thereafter all four cars were delivered to plaintiffs at Live Oaks, Fla. They were there mingled, and, all horses having been mingled, it was impossible to segregate the horses in the Texas & Pacific car from the horses in the other cars.

[5] Witness Cousland testified that the condition of the horses in all four cars was about the same. Various witnesses testified that the class of horses in all four cars were the same, with the exception of the colts which were in the Texas & Pacific car. For the purpose of shedding light on the condition of the horses in the remaining three cars, which condition was the same as that in the Texas & Pacific car, it was proper for the court to admit testimony tending to show the general condition of all of the stock without reference to which car transported them. The defendant placed upon the stand its only witness with reference to the condition of the horses and their values when they arrived at Live Oaks, Fla. It proved by the witness McGregor the condition of all the horses, including those in the Texas & Pacific car, as well as the value of all the horses at Live Oaks. Should it be held that the court erred in permitting testimony concerning horses in the Texas & Pacific car, the appellant has waived such error by going into detail with its witness McGregor as to the condition of all of the horses, including the Texas & Pacific car after it arrived at Live Oaks, Fla.

[6] Furthermore, the court, in its charge to the jury, instructed them to find for the defendant in reference to the horses shipped in the Texas & Pacific car, and also expressly instructed them not to consider any evidence with reference to animals in said car or the cause of injuries to animals in said car. So, if there was error in the admission of this testimony, it was cured by this instruction.

The error, if any, in admitting the testimony relating to the Texas & Pacific car, made the basis of the sixth and seventh assignments, was harmless. Furthermore, it was cured by the instruction just noted above.

The testimony complained of in the eighth assignment is not subject to the objection which was urged against it, as shown by the bill of exception taken to its admission. The witness was qualified to testify as to the market value of the animals at Live Oaks for which reason the tenth assignment is without merit.

[7] The eleventh assignment complains of the admission of testimony of the witness Taylor as to the intrinsic value of those animals at Live Oaks which arrived in a badly damaged condition, assuming that there was no market value for them in that condition. Under the evidence, it was doubtful whether the animals had a market value at Live Oaks, and in view of this uncertainty, it would seem proper to admit evidence of their intrinsic value. Railway Co. v. Powers, 54 Tex. Civ. App. 168, 117 S. W. 459; Express Co. v. Lothrop, 20 Tex. Civ. App. 339, 49 S. W. 898; Railway Co. v. Jackson, 99 Tex. 343, 89 S. W. 968.

[8] Furthermore, Taylor testified both as to market and intrinsic value; and, since it was to the effect that the intrinsic value was the same as the market value, it would seem that appellant could not have been injured in any way by his testimony as to intrinsic value.

[9] It is next assigned that the court erred in permitting plaintiffs to make R. H. Boulware a party plaintiff to this suit, over the objection of defendant, for the reason that the right of the said Boulware to recover damages in and to the property involved in this suit was barred by the statute of limitations of two years; and for the further reason that if the said Boulware was a necessary party to this suit, and had an interest in the horses at the time the same were shipped, then it was incumbent upon him to file his claim for damages to the said horses within the period of 120 days after their arrival at the point of destination, as provided for in the special contract of shipment under which the said horses were carried, and having failed to file such a claim, Boulware was precluded from recovering any damages by the terms of the contract of shipment.

As to the issue of limitation it has been held that in actions such as this, the four, and not the two, years' statute of limitation is applicable. Elder, etc., v. Railway Co., 105 Tex. 628, 154 S. W. 975. Other reasons might be mentioned in connection with this phase of the assignment, but it is unnecessary to do so, as the cited case forecloses the question against appellant.

[10] Neither is there any merit in the contention that it was necessary for Boulware to file a notice with defendant of his claim for damage within 120 days after arrival of shipment at its destination. The contracts required the shippers to give the notice. A. S. Cousland was the shipper named in one of the contracts, and E. D. McMillen was so named in the other. Notices given by such shippers were all that was required.

[11] In the notice given defendant, the amount claimed was $2,000. The verdict and judgment is for $3,250, with interest from

January 1, 1912. Complaint is made of the refusal of an instruction limiting recovery to $2,000. The clause in the contract requiring notice is as follows:

"It is further agreed that as a condition precedent to any right of action for damages for loss or injury to said stock, or for delay in transporting same, or decline on the market, the said shipper will give notice in writing to the carrier, setting out in detail a full statement of the losses, injuries, delays and decline in market, for which damages are claimed, and the amount thereof, within one hundred twenty days after same shall have been occasioned, which notice shall be given to some traffic officer, station agent or other convenient local agent of the carrier, and the filing of suit for such damages shall not be a compliance with this requirement. The purpose of requiring this notice is to enable the carrier to investigate and settle such claims before suit is instituted, and no action for any such damages shall be brought or maintained, unless the notice in writing mentioned in this paragraph be given within said one hundred and twenty days."

The object of the provision in bills of lading requiring notice to the railroad when stock have been injured is to afford the railroad an opportunity to investigate the fact of injuries as well as the extent of damages, if any, that has been sustained by the shipper. When a notice is sufficient in terms to advise the railroad company of any injury, then the railroad company can use its facilities in ascertaining and investigating the character of damages sustained, the cause of damage, and the extent of the damage. Appellant can claim no rights growing out of its bill of lading in reference to notice other than as contained in said paragraph of contract providing:

"The purpose in requiring this notice is to enable the carrier to investigate and settle such claims before suit is instituted"

—and when the notice above set forth was given by McMillen and Cousland, the evident purpose of this provision in the contract was carried out and satisfied. When they received that notice they had ample information which would enable them to investigate and settle the claim before suit was instituted, had they been inclined so to do. This question was before the court in Railway Company v. Holmes, 177 S. W. 507, where it is said:

"The fact that the claim filed with the notice of damages, with appellant, is not as large as the amount sued for, would not defeat his right to sue because no notice was given. The notice was given, but the claim for damages was less than sued for. Appellees were not confined to any special amount by the contract, but it required notice in order that appellant might investigate before the witnesses or evidence were beyond its reach."

The special instruction was properly refused for the reasons indicated.

[12] The fifth paragraph of the court's charge reads:

"By the contract of shipment, plaintiffs agreed to feed and water the horses, in this suit, and it was their duty to do so, and not the duty of the defendant, and if the defendant gave the plaintiffs a reasonable and proper opportunity to water and feed the horses, after they were received by defendant, defendant would not be liable for any failure to feed and water them; but if the defendant negligently failed to give or furnish reasonable and proper opportunity for feeding and watering the horses, and if on that account the plaintiffs were unable to feed and water the horses for an unreasonable length of time, under all the circumstances of this case, and if thereby the horses were injured, as alleged by plaintiffs, the defendant would be liable for such injury."

Error is assigned to this portion of the charge, based upon this proposition:

"This suit being based upon an interstate shipment of horses, the liability of defendant is controlled by the provisions of the federal laws, and thereunder defendant was permitted to confine said horses in its cars for the period of 28 consecutive hours, and the reasonableness or the unreasonableness of so doing was not a question to be determined by the jury."

We do not understand the law to be as contended. Upon the contrary, the correct rule is that the federal statute does not change the common-law duty of the carrier with respect to live stock except to place a time limit within which such stock shall be watered, fed, and rested, unless prevented by certain contingencies. At common law, it was the duty of carriers transporting live stock for long distances to feed, water, and rest them as reasonable necessity required. The statute only makes certain when and where such common-law duty shall be exercised. The object of the statute being to prohibit the confinement of animals longer than the time specified, it is not to be construed as a grant of privilege to the carrier, authorizing it to confine stock for the length of time therein specified, irrespective of the question of negligence in so doing. 4 Ruling Case Law, p. 985; Railway Co. v. Ivy, 79 Tex. 444, 15 S. W. 692. Under this view of the law, this paragraph of the charge cannot be considered as conflicting with paragraph 6 thereof.

Affirmed.