## Miller v. West Penn Power Company.

*John Duggan, Jr.,* for plaintiff.

*E. J. McDaniel and Edward O. Tabor* (of Pittsburgh, Pa.), for defendant.

HENDERSON, J., Sept. 12, 1927.—The plaintiff sues in *assumpsit* to recover the sum of $717 as a reasonable compensation for the use of certain electric wires, lines and poles of the defendant company over, across and on his land during a period of three and one-half years prior to the institution of the suit. At the trial, the following stipulation of facts for case stated was agreed to by the parties and read into the record, viz.:

"And now, Oct. 13, 1926, it is hereby stipulated and agreed by and between the parties to this suit, through their counsel, that this case be submitted to the court upon the following statement of facts, together with testimony as to a reasonable rental for the poles mentioned in the statement, upon which the court shall base its conclusions of law and upon which the court is hereby authorized to enter its judgment, with the right reserved to either party to appeal from the decision of the court:

"On Oct. 20, 1902, by written contract, which is herewith offered and marked and identified as Exhibit 'A,' W. H. Graham obtained the grant of a right of way from George A. Hogg for the erection of forty-one electric poles across Hogg's farm in Bullskin Township, Fayette County, Pennsylvania, for the purpose of conveying electric current for light, heat and power. Said agreement, after reciting that 'for and in consideration of the payments, covenants and stipulations herein contained to be paid, kept and performed, it is mutually agreed between the parties, their heirs, administrators and assigns,' recited that Hogg granted the said right of way for poles to Graham, with the right at all times to enter upon the property to keep the poles and lines in repair, and that Graham was to do the following things: *(a)* Pay to Hogg the sum of $1 upon the execution of the agreement; *(b)* pay $1.50 for each and every pole erected; *(c)* furnish electric light for domestic purposes to Hogg, his heirs and assigns, at one-half the rate charged in Connellsville; and *(d)* agree to pay the construction damages. The contract was signed and sealed by both parties. A receipt, signed by George A. Hogg, dated March 31, 1903, shows that $61 was paid by Graham to Hogg in pursuance of said contract. The electric pole line was erected and the West Penn Power Company, a public service corporation of Pennsylvania, engaged in the manufacture, sale and distribution of electric light, heat and power throughout western Pennsylvania, has used it continuously and openly since 1902 and is the present owner of all the rights which were granted by Hogg to Graham. A. Glenn Miller, the plaintiff here, is the successor in title to Hogg of the land on which said pole line is built. Miller has never used electricity supplied by the power company. Four and a half years ago new poles were erected by the power company to replace the old line, and when that was done Miller demanded electric service from the West Penn Power Company at one-half of the Connellsville rate, on file with the Public Service Commission of Pennsylvania. This electric service was refused to Miller at the said one-half rate because of the passage of the Public Service Company Law of July 26, 1913, P. L. 1374, particularly section 8, article III of said act, and its supplements. The plaintiff Miller brings this suit against the West Penn Power Company for what he terms 'a reasonable consideration for the use and enjoyment of his property and for the privilege granted to the power company of maintaining its lines as aforesaid in and upon his property,' to wit, for $5 per pole per year for a period of three and one-half years. If the court be of opinion that since the passage of the Public Service Act of 1913, hereinabove referred to, that it is unlawful for said defendant company to furnish to plaintiff electric power at a rate other than that prescribed by the tariffs on file with the Public Service Commission, and if the court be of opinion that said contract, hereinabove mentioned, was abrogated by said act, and that said plaintiff is not now entitled to recover anything as a rental for said right of way, then judgment shall be entered in favor of the defendant *non obstante veredicto*. But if the court is of opinion that the plaintiff is entitled to a reasonable rental for the right of way and the use of the farm, then judgment shall be entered in favor of the plaintiff for whatever amount the

jury shall say is a reasonable compensation for the right of way as herein-above mentioned."

Testimony was then taken to determine the fair rental value of each pole on the property of plaintiff per year, and as to that fact the jury found the sum of $2.50 per pole per year to be a fair rental value, thus completing the statement of facts upon which we are asked to determine the right of the plaintiff to recover, and if entitled to recover, the amount. The defendant denies any liability to plaintiff under the law applicable to this statement of facts.

It is conceded by the plaintiff that the defendant company was clearly within its rights in refusing to furnish the plaintiff service under the agreement entered into in 1902 at one-half the rate charged in the City of Connells-ville: Section 8, article III of the Public Service Company Law. The plaintiff also concedes the power of the State to enact such law. The question before the court may be stated thus: Is a defendant in possession of a right of way over plaintiff's land by virtue of a contract, lawful when made, which provided, *inter alia*, for furnishing service to plaintiff at a reduced rate, in consideration of said right of way, liable for a reasonable rental to plaintiff for said right of way after the State by appropriate legislation has made it unlawful for the defendant to furnish plaintiff service at the rate set forth in the agreement? The plaintiff contends that the defendant is liable for a reasonable rental for the use of his land since he cannot have the electric current at the reduced rate, and that to deny him a reasonable rental therefor amounts to a confiscation of a part of his property, in that it permits the defendant to use his property without paying the full compensation agreed upon for the use of the land. We are of the opinion that this contention is unsound. For the grant of the right of way the grantor received the sum of $1 upon the execution of the agreement, $1.50 for each of the forty-one poles, or $61 in all, and the payment of damages caused by the construction and operation of the poles and line; the other part of the consideration—electricity at a reduced rate—was not furnished, as being in violation of the Public Service Company Law. This portion of the contract, by the enactment of the Public Service Company Law, was rendered null and void: Louisville & Nashville R. R. Co. *v.* Mottley, 219 U. S. 467; V. & S. Bottle Manuf. Co. *v.* The Gas Co., 261 Pa. 523; Leiper *v.* B. & O. R. R. Co., 262 Pa. 328.

At the time the contract was entered into, it was valid and enforceable in all its parts, as in the case of Schaper *v.* Cleveland & Erie Ry. Co., 265 Pa. 109, which was a bill in equity to enforce performance of a written contract to sell round-trip tickets and books of tickets at certain rates, where the Supreme Court, affirming a decree dismissing the bill, said: "The contract which the appellant would enforce was valid when made, but the parties entered into it subject to the power of the State to change the rates in the future in the exercise of its governmental authority." And so, in this case, the parties contracted subject to the power of the State to change the rates in the future "in the exercise of its governmental authority." The answer to the question now before the court is found in the case of Suburban Water Co. *v.* Oakmont Borough, 268 Pa. 243, where, in an opinion by Mr. Justice Kephart, the court said:

"All public service contracts are viewed in the light of having been made with an implied provision that the rate named therein is subject to change according to law so as to keep it reasonable and nondiscriminatory at all times, Pinney & Boyle Co. *v.* Los Angeles Gas & Elec. Co. (Cal.), L. R. A. 1915-C, 282, 287, where it is stated that 'it will be conclusively presumed that

the parties contracted in contemplation of the power of the proper board or tribunal to fix the rate in every case where such power exists and may have been thereafter legally exercised,' citing Louisville & Nashville R. R. Co. *v.* Mottley, 219 U. S. 467, 34 L. R. A. (N. S.) 671; Seattle *v.* Hurst, 50 Wash. 424, 18 L. R. A. (N. S.) 168; Portland R. Light & P. Co. *v.* Railroad Commission, 56 Ore. 468; Knoxville Water Co. *v.* Knoxville, 189 U. S. 434; Buffalo East Side R. R. Co. *v.* Buffalo Street R. R. Co., 111 N. Y. 132, 2 L. R. A. 384. All the remaining provisions of the contract remain in full force as against the parties thereto: State *v.* Tampa Water Works Co., 56 Fla. 858, 874, 19 L. R. A. (N. S.) 183, 189, 190. Invalidity in part does not make the whole contract invalid, Winsor *v.* Com. Coal Co., 63 Wash. 62, 33 L. R. A. (N. S.) 63; Packard *v.* Byrd, 73 S. C. 1, 6 L. R. A. (N. S.) 547; Central N. Y. T. & T. Co. *v.* Averill, 199 N. Y. 128, 32 L. R. A. (N. S.) 494; the same rule was applied to a bill of lading where a part of it became invalid by operation of law, Whitnack *v.* C., B. & Q. Ry. Co., 82 Neb. 464, 19 L. R. A. (N. S.) 1011; and where passes have been declared illegal, the carrier which had agreed to give them in consideration of the granting of the right of way was permitted to retain the fruits of the contract, Cowley *v.* N. P. Ry. Co., 68 Wash. 558, 41 L. R. A. (N. S.) 559; the same rule was applied to a contract with a gas company: Birmingham, etc., Co. *v.* R. C. Pratt (Ala.), L. R. A., 1915-*A*, 1208.

"The reason for this rule is simple, as shown by the many cases which hold that the change of a rate fixed by contract for the performance of service by a public utility company does not impair the obligation of the contract under the Constitution of the United States, and, if it did, the change would be unlawful: Pinney & Boyle Co. *v.* Los Angeles Gas & Elec. Co. (Cal.), L. R. A., 1915-C, 282, 287; Knoxville Water Co. *v.* Knoxville, 189 U. S. 434; New Orleans *v.* New Orleans Water Works Co., 142 U. S. 79; Wyandotte County Gas Co. *v.* Kansas, 231 U. S. 622; Benwood *v.* Public Service Comm., (W. Va.), L. R. A. 1915-C, 261, 273; Browne *v.* Turner, 176 Mass. 9; Union Dry Goods Co. *v.* Georgia Public Service Corp., 83 S. E. Repr. 946, 248 U. S. 372; Portland R. L. & P. Co. *v.* Portland, 200 Fed. Repr. 890; Bullard *v.* Northern Pacific Ry. Co., 10 Mont. 168; Southern Wire Co. *v.* St. Louis Bridge and Tunnel R. R. Co., 38 Mo. App. 191; Fitzgerald *v.* Grand Trunk R. R. Co., 63 Vt. 169; and see Foltz *v.* Public Service Comm., 73 Pa. Superior Ct. 24. The contract is simply modified or reformed so as to include for the time being the new rate fixed by law. The power to reform contracts of this kind was granted under the Act of 1874, giving the courts jurisdiction over rates: Turtle Creek Borough *v.* Penna. Water Co., 243 Pa. 401, 408; and see a learned discussion of the effect of the Turtle Creek case in S. P. Ry. Co. *v.* S. V. Water Co., L. R. A., 1917-E, 680, 684.

"Our own cases and those from other jurisdictions throughout the United States hold the change in rates, so as to make them reasonable and nondiscriminatory, is not an impairment of the obligation of a contract to be performed by a public utility company. It is beyond the power of the contracting parties to fix the rates permanently, and the contract remains in full force and effect, binding on both parties as long as the obligation is unimpaired. See opinion of Chief Justice Brown, Scranton *v.* Public Service Comm., 268 Pa. 192, for a discussion of the theory upon which this principle rests."

Further, from the testimony taken in the case, it appears that the plaintiff became the owner of the farm over which the poles and line in question were erected about ten years after the Public Service Law was enacted and about twenty years after the original contract for the grant was executed. He,

therefore, took the farm knowing that this particular feature of the contract was null and void. We, therefore, conclude that the plaintiff in this proceeding is not entitled to recover anything as a reasonable compensation for the use of his ground in lieu of the right to have electricity at the reduced rate, and, hence, judgment should be entered for the defendant.

Now, Sept. 12, 1927, upon and after due consideration, it is ordered that judgment be entered in favor of the defendant.

From Luke H. Frasher, Uniontown, Pa.