GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY V. JAMES F. POWERS ET AL.

Decided February 24, 1909.

**1.—Carrier—Injury to Live Stock—Pleading.**

In an action against a railroad company for the value of a mare killed by the negligence of the defendant during transportation, petition considered, and held not subject to a special exception on the ground that the allegations were insufficient to apprise defendant of the facts which would be relied on by plaintiff to prove the market value of the mare.

**2.—Carrier of Live Stock—Rule of Liability.**

Railroad companies as carriers of live stock are liable absolutely for loss or injury to stock intrusted to them for transportation, unless the injury is occasioned by the act of God, or the common enemy, or the negligence of the shipper, except that they are not liable for injury caused by any "proper vice" or natural propensity of the animals themselves unmixed with negligence on the part of the carrier. Saving the exceptions, the carrier is liable as an insurer, even in cases where no negligence on its part is affirmatively shown, and the carrier must exercise ordinary care to prevent injury from being caused by the natural propensities of the animals.

**3.—Same—Loss of Live Stock—Measure of Damage—Practice.**

When, in an action against a railroad company for the value of an animal lost by its negligence, the evidence is conflicting as to whether or not the animal had a market value at a certain time and place, it is proper for the plaintiff to introduce evidence as to the actual or intrinsic value of the animal as well as to its market value.

**4.—Same—Same.**

In an action against a railroad company for the loss or injury of an animal, where it appears that there was no market value for an animal of that kind at its destination, there is no fixed rule of law which requires the plaintiff to prove such value at the next nearest market place rather than prove its actual or intrinsic value. The rules of law for ascertaining value are not inflexible; the circumstances of each case must control. What is required is that satisfactory evidence be produced from which the value of the property in controversy may be ascertained with a reasonable degree of certainty.

**5.—Hypothetical Question—Based on Evidence.**

Whenever it reasonably appears to the trial court that there is evidence from which the jury may find a certain group of facts to exist, such facts may be used as a hypothesis for a question to an expert witness to elicit his opinion thereon.

**6.—Trial—Improper Argument—Objection—Practice.**

In order to have an Appellate Court consider an assignment of error based upon improper argument of opposing counsel, it is indispensable that objection be made and exception taken at the time the argument is made, except when the trial judge has established a rule that he will in no case sustain on objection to improper argument. It is not indispensable, however, that a request

be made of the court by the complaining party to charge the jury to disregard the objectionable language.

Appeal from the District Court of Bee County. Tried below before Hon. F. G. Chambliss.

*Proctor, Vandenberge & Crain,* for appellant.

*Claude Pollard, Duval West* and *R. J. McMillan,* for appellee, St. L., B. & M. Ry. Co.

*Fly & Daniels* and *Beasley & Beasley,* for appellee, J. F. Powers.

NEILL, ASSOCIATE JUSTICE.—James F. Powers sued the Galveston, Harrisburg & San Antonio Railway Company and the St. Louis, Brownsville & Mexico Railroad Company to recover $1,528 damages alleged to have accrued by reason of the death of a certain mare of the plaintiff, which he claimed was caused by defendants' negligence while in their possession for transportation from Refugio to San Antonio, Texas. The negligence averred was, in substance, that the car in which the animal was shipped was jerked, roughly handled and managed, delay in transportation, she was not properly watered and cared for in transportation, a delay in delivering her to the consignee after she arrived in San Antonio, and that she was not properly fed, watered and cared for after her arrival at San Antonio before delivery to the consignee.

The answer of the Galveston, Harrisburg & San Antonio Railway Company consisted of a general demurrer and special exceptions to plaintiff's petition, a general denial, and a special plea that the death of the animal was due to an inherent vice and not to any negligence on its part. The other defendant pleaded a general denial, and especially that it transported the animal with reasonable dispatch over its line of road and delivered her, uninjured and in good condition, at the end of its line to appellant, its connecting carrier, to be thence carried to San Antonio, and that her death was attributable to an inherent vice which rendered her unfit for shipment.

The court overruled appellant's exceptions to plaintiff's petition and the trial resulted in a verdict and judgment in favor of plaintiff against appellant for $750, and against plaintiff in favor of the other defendant.

*Conclusions of Fact.*—It is undisputed that on March 4, 1907, plaintiff delivered a mare and her six days' old colt to the St. Louis, Brownsville & Mexico Railway Company at Refugio, Texas, to be carried thence to the city of San Antonio, the animals being routed over its line of road to Placedo and from thence over appellant's line to San Antonio. The mare was shipped and consigned to J. F. Conley, at San Antonio, for the purpose of having her bred to his stallion. The testimony was conflicting as to whether the mare, on account of having foaled so recently, was in a fit condition for shipment. As it was for the jury to determine this issue, we find, in

accordance with the verdict, that her condition was such as to admit of her being safely transported by rail over defendants' roads to her destination, if ordinary care and prudence were used by defendants' servants to that end. While the evidence may be regarded as purely circumstantial we believe that it reasonably tends to show that such care and prudence was not exercised by appellant after the mare was delivered to it by its codefendant at Placedo to be carried and delivered to the consignee at destination. Such evidence tending to show that she was roughly handled, and not properly watered and cared for in transportation, and that there was a delay in delivering her to the consignee; and that she was given too much water after she arrived at San Antonio; and that such acts of omission and commission on the part of appellant were negligence; and that such acts of negligence, or some of them, were the proximate cause of the mare's death, which occurred on March 14, 1907. The evidence is also sufficient to show that the market value of the mare, as well as her intrinsic value, in San Antonio was, on the day she was delivered to the consignee, $725, and that the expense incurred by appellee in keeping and caring for the animal while in the possession of the consignee was $25, as found by the jury.

*Conclusions of Law.*—1. The first assignment complains of the court's overruling appellant's first special demurrer to plaintiff's original petition, which is as follows: "This defendant demurs specially to plaintiff's petition on the ground that the allegations thereof are insufficient to apprise the defendant of facts, the knowledge of which is essential to defendant in order to enable it to intelligently prepare its defense as to the market value of said mare in San Antonio sued for herein, in this: That the only description given of said mare in said petition is that she was a certain bay mare, standard bred, and a speedy roadster, well developed and shapely, of kind and gentle disposition, healthy, and in the prime of life, and possessed of other good qualities, said petition failing to allege what such other good qualities consisted of, the particular breeding of said mare, her weight, her size and age, and her record for speed, or the speed which she was capable of making, or, in fact, any particular trait which would create a market value for the very large amount sued for, said petition utterly failing to allege any facts which would constitute a market value for such animal so greatly in excess of the market value of an ordinary mare of the general description of plaintiff's mare, as stated in said petition."

The portion of the petition to which the demurrer was directed is as follows: "That at said San Antonio at all times during the month of March, 1907, there was a market for said mare and all such like animals, and that she was at said place at all times during said month of March, 1907, worth in said market the sum of Fifteen Hundred Dollars. That the market value of said mare at said San Antonio, at the time she arrived there, and at the time she would have arrived there had she been transported with reasonable dispatch was, as stated, the sum of Fifteen Hundred Dollars. If, however, plaintiff is mistaken in this, and at said times and place there was no market

for said mare nor for such like animals, and in fact she had no market value in said San Antonio at the time she arrived there nor at the time she would have arrived there had she been transported with reasonable dispatch, then plaintiff says that the mare was standard bred, a speedy roadster, well developed and shapely, of kind and gentle disposition, healthy and in the prime of life, and was, on account of these and her other good qualities and for the purposes for which she could be used, of the fair and reasonable value of Fifteen Hundred Dollars at said San Antonio, and at said Refugio, at the time she arrived in San Antonio as stated and at the time she would have arrived there had she been transported with reasonable dispatch, and was so of the fair and reasonable value of Fifteen Hundred Dollars at such and other places at all times during the month of March, 1907."

The proposition asserted under the assignment is: "A defendant is entitled to be apprised by plaintiff's pleadings of the facts relied upon by plaintiff with sufficient explicitness to enable defendant to anticipate with reasonable certainty the character of evidence that will be tendered to establish such facts, in order that he may have the opportunity to make the investigation necessary to a proper preparation of his defense." We think the pleading in question fully meets the proposition by conforming to every requisite of good pleading.

2. The second, third, fourth, eleventh, twelfth, seventeenth and twenty-fourth assignments of error, which complain of the insufficiency of the evidence to support the verdict, are disposed of adversely to appellant by our conclusions of fact. In this connection we deem it proper to say that, in reaching the conclusion that the animal was injured by the negligence of appellant, we had in view, as applicable to the evidence, these principles of law:

Carriers of live stock are liable absolutely for loss or injury to stock intrusted to them for transportation, like other common carriers, unless the loss or injuries were occasioned by the act of God, or the public enemy or the negligence of the shipper, except that they are not liable for loss or injury caused by the "proper vice" or natural propensities of the animals themselves and not by negligence on the part of the carriers. But the carrier is bound to exercise ordinary care to prevent loss or injury from being caused from the "proper vice" of the animals, and is not excusable for loss or injuries resulting therefrom which might have been prevented by the exercise of ordinary care. In order to relieve it from liability, it must appear that the vice or natural propensity of the animal was the sole proximate cause of the loss or injury (Cragin v. New York Cent. Ry. Co., 51 N. Y., 61; Penn v. Buffalo, etc., Ry. Co., 49 N. Y., 204; Illinois Cent. Ry. Co. v. Adams, 42 Ill., 474; Evans v. Fitchburg Ry. Co., 111 Mass., 142); and unless it so appears, the carrier is liable as an insurer, even in cases where no negligence on its part is affirmatively shown. (Ft. Worth & D. R. R. Co. v. Greathouse, 82 Texas, 111; Kinnick v. Chicago, R. I. & P. Ry., 69 Iowa, 665, 27 Am. & Eng. Ry. cases, 58; 4 Elliott on Railroads (2d ed.), sec. 1548a;

Louisville & N. Ry. Co. v. Pedigo, 113 S. W. (Ky.), 116; Southern Ex. Co. v. Logan, 115 S. W., 184.)

3. Under the fifth, sixth and seventh assignments of error, which complain of the admission of evidence tending to show the intrinsic value of the mare, are asserted these propositions: (1) "Evidence of intrinsic value is admissible only where it is shown that the article possesses no market value;" (2) "Where, in a suit against a common carrier for the loss of a horse transported by it, it is shown that there is no market value for the horse at destination, then the measure of damages is the market value of the horse at the nearest market;" and (3), "Unless a witness is shown to be legally qualified to testify as to whether or not there is a market value of a given article at a particular place and time, it is reversible error to permit him to testify in reference thereto."

As to the first proposition: The evidence as to whether the animal had a market value in San Antonio was such as might have authorized the jury to find either way; and as it could not be told with reasonable certainty that it would not find in the negative upon the issue, the plaintiff could not be expected, in anticipation that the jury would not so find, to forego proving her actual value and to rest his case alone upon the hypothesis that he had sufficiently shown her market value so as to require the jury to so find. But, the issue being doubtful, he had the right to relieve himself of the consequence of the uncertainty by proving her intrinsic or actual value. (Pacific Express Co. v. Lothrop, 20 Texas Civ. App., 339; Gulf, C. & S. F. Ry. Co. v. Jackson, 99 Texas, 343.)

As to the second proposition: There is no hard and fast rule, that we know of, which requires the plaintiff, in an action against a common carrier for the loss or injury of an animal delivered it for transportation where there is no market value for one of its kind at destination, to prove its market value at the next nearest place where there is a market for such an animal, to the exclusion of its actual value. As is said by the Supreme Court in Gulf, C. & S. F. Ry. Co. v. Jackson, *supra:* "The rules of law for ascertaining damages are not inflexible, but the circumstances of each case must control. What is required is that reliable and satisfactory evidence shall be produced from which the value of the property in controversy may be ascertained with a reasonable degree of certainty." To this end it is held that in the absence of market value at destination, the actual or intrinsic value of the animal may be shown. (Gulf, C. & S. F. Ry. v. Anson, 82 S. W., 785; Texas & P. Ry. Co. v. Ellerd, 38 Texas Civ. App., 597; Atchison, T. & S. F. Ry. Co. v. Veale, 39 Texas Civ. App., 37; Texas & P. Ry. Co. v. Dishman, 41 Texas Civ. App., 250.)

The third proposition is a mere abstraction not shown by the statement under the first proposition, which is referred to as the one to be considered in support of it, to have any relation to the proposition, it not appearing therefrom that the witnesses named in it did testify to the market value of the animal in San Antonio on the date she arrived there.

4. As before intimated in this opinion, we think the evidence was

such that the jury might have found either way on the question as to whether the animal had a market value in San Antonio. Hence, the court did not err in submitting the issue of her market value there, which is complained of in the eighth assignment, nor in submitting the question as to her intrinsic value, as is complained of in the ninth. The tenth assignment raises the same questions that are presented by the eighth and ninth, and are likewise disposed of.

5. This paragraph of the court's general charge: "If you do not believe from the evidence that the mare was injured while being shipped, or before her delivery by the railway company in San Antonio, or that if she was so injured that it was not caused by the negligence of either of the defendants in the manner as substantially alleged in plaintiff's petition, or that if she was injured and such was the result of the physical condition she was in by reason of her having recently given birth to her foal, or that if she was so injured by the negligence of defendant that such injuries were not the proximate cause of her death, or that her death resulted from the negligence of plaintiff or his agent or employe in handling and caring for her after she had been so delivered in San Antonio, then in either such event your verdict must be for the defendants," embodies the substance of special charges Nos. 2, 3 and 4, requested by appellant, the refusal of which is the basis of the thirteenth, fourteenth and fifteenth assignments of error. For this reason said assignments are overruled. We also overrule the sixteenth assignment, because the issue of contributory negligence therein referred to was correctly submitted in the main charge to the jury.

6. Under the eighteenth and nineteenth assignments it is asserted as a proposition, that "It is error to permit a hypothetical question based upon facts to be propounded to a witness when the facts which constitute the basis of such question have not been proven." It may be laid down as a rule that whenever there is evidence upon which a jury may find the existence of a group of facts upon which an expert may base an opinion such as is legitimate for such a witness to give, such facts may be assumed as a hypothesis for a question to elicit from the witness his opinion deducible from such facts. True, before such facts can serve as data for the hypothesis, it must reasonably appear to the court that the evidence is such as would warrant the jury in finding that they were proved. But where there is such evidence the court can not arbitrarily sustain an objection to a question, based upon the assumption of the existence of such facts, asked an expert as to a matter about which he can give an opinion upon the assumption that such facts are·proved. For if this could be done by the trial court, the basis upon which expert testimony rests would, in many instances, be destroyed. The witnesses to whom the hypothetical questions referred to in the assignments were asked, were shown to be experts in regard to the matters under inquiry; and, we believe, the evidence as to the facts upon which the questions were predicated was sufficient to admit of the finding of such facts by the jury, as a basis for the questions upon which it was sought to elicit the witnesses' opinion as to what was the cause of the

mare's death. We, therefore, overrule these, as well as the twentieth, twenty-first and twenty-second assignments.

7. It appears from the explanation of the trial judge appended to the bill of exceptions taken to the remarks of one of counsel for plaintiffs, which are the subject of the twenty-third assignment of error, that "No objection was made at the time these remarks were made, and no request was made to instruct the jury to disregard same or have counsel withdraw them." When an exception has been reserved by proper bill to language used by counsel in addressing a jury, this court has authority to review the action of the trial court in reference thereto, although there may have been no request by the complaining party that a charge be given to the jury to disregard the language. (Western U. Tel. Co. v. Perry, 95 Texas, 645.) But the rule is that, unless objection is offered to the argument at the time it is made, notice of the objection will not be taken in an Appellate Court. (Moore v. Moore, 73 Texas, 383; Moore v. Rogers, 84 Texas, 1; Gulf, C. & S. F. Ry. v. Hockaday, 14 Texas Civ. App., 613; Missouri, K. & T. Ry. v. Nesbit, 43 Texas Civ. App., 630; American Freehold, etc., Co. v. Brown, 101 S. W., 862; Galveston, H. & S. A. Ry. Co. v. Worth, 107 S. W., 961.) It is, however, held that the reason of this rule does not apply when the trial judge has established a rule he will in no case sustain an objection to improper argument, and will never instruct a jury to disregard the argument, however improper it may be. See Galveston, H. & S. A. Ry. Co. v. Washington, 42 Texas Civ. App., 380; Houston & Texas C. Ry. Co. v. Rehm, 82 S. W., 527. It does not appear that the trial judge in this case had any such rule in his court. Therefore we think the rule of law which requires objection to be offered to the argument at the time it is made, should govern here; and as no such objection was made, the assignment should be overruled.

8. The charge of the court is not obnoxious to any of the objections urged against it under the twenty-fifth assignment of error. Nor did the court err in refusing special charge No. 10 requested by appellant; for, if while the mare was in the appellant's possession she was without feed or water, the length of time she was in transit might have had considerable "bearing upon the case."

9. As there was not a particle of evidence tending to show that the mare suffered any injury while in the possession of appellant's codefendant, special charge No. 8, requested by appellant, was properly refused.

There is no error in the judgment, and it is affirmed.

*Affirmed.*

Writ of error refused.