## LEE ROY CRAWFORD PRODUCE CO. v. THOMPSON.

### No. 12044.

Court of Civil Appeals of Texas.
San Antonio.

March 1, 1950.

Rehearing Denied March 29, 1950.

North & Blackmon, Corpus Christi, John
C. North, Jr., Corpus Christi, for appellant.

Kleberg, Eckhardt, Mobley, Lockett &
Weil, Corpus Christi, for appellee.

W. O. MURRAY, Chief Justice.

Lee Roy Crawford Produce Company, hereinafter referred to as appellant or shipper, sued Guy A. Thompson, Trustee, St. Louis, Brownsville & Mexico Railway Company, hereinafter referred to as appellee or carrier, to recover damages to two carloads of vegetables shipped from the Rio Grande Valley, Texas, to eastern markets. The trial was before the court without the intervention of a jury and resulted in judgment in favor of appellant against appellee as to one of the carloads and in favor of appellee against appellant, that he take nothing, as to the second carload. Thereafter the two counts in appellant's petition were severed and this appeal relates only to the second count in the petition, upon which appellant failed to recover.

Lee Roy Crawford Produce Company has prosecuted this appeal from the judgment denying him any recovery under the second count in his petition.

The carload of vegetables herein involved was seven hundred lugs of tomatoes shipped from San Benito, Texas, first to Kansas City, Missouri, thence diverted to Chicago, Illinois, and again diverted to Pittsburgh, Pennsylvania. The trial judge made and filed the following findings of fact:

"I. November 30, 1946, at 10:30 P.M., Plaintiff delivered to the Defendant at San Benito, Texas, for transportation to himself at Kansas City, Missouri, seven hundred (700) lugs of tomatoes. Defendant issued its not negotiable bill of lading therefor, bearing notation of the above facts and also reciting that the foods were shipper's load and count. 605 of these were inspected by the United States Department of Agriculture and the Texas State Department of Agriculture inspector at Harlingen, Texas, between 9:00 A.M., on November 29, 1946, and 3:30 P.M., November 30, 1946. 95 lugs of these had been similarly inspected at an undisclosed time. Each lot was found to be U. S. No. 2 grade. These tomatoes were loaded in Car ART 24059. The shipper directed the car to be transported with the vents and plugs of the car open if the temperature was above 45° above zero Fahrenheit and closed if the temperature was below 45°.

"II. The car of tomatoes was due in Kansas City at 2:00 A.M. December 4, 1946, and actually arrived at 11:40 P.M. December 3, 1946.

"III. December 5, 1946, at 7:00 P.M. the plaintiff filed orders with the Defendant at San Benito, Texas, reconsigning the car to Plaintiff at Chicago, Illinois, with the instructions as to the ventilation remaining the same. Under this diversion order, the car was due in Chicago at 12:30 A.M. December 7, 1946, and actually arrived at 12:10 A.M. that day.

"IV. After the car arrived at Chicago, LaMantia Bros. D'Arrigo Company, at the request of Plaintiff, inspected the tomatoes December 8, at 8:15 A.M. and found that the tomatoes were 'fair' quality, meaning the quality at origin, that there were the following defects existing at origin: 36% average shoulder bruises and scars and 4% growth cracks, 3% were soft ripe, and there was an average of 3% decay. They also inspected the tomatoes on December 12 at 9:20 A.M. at which time they found: 6% soft ripe and 4% decay. When inspected December 8, the tomatoes inspected were still U. S. No. 2 grade, but on December 12, due solely to ripeness, they were no longer U. S. No. 2 grade. The decay and ripeness shown by each of these inspections was greater than the average for the car, since, in each case, only the upper layers were sampled and decay and ripeness is greater there than in the car as a whole.

"V. While the car was in Chicago, one heater was installed and lighted December 13 at 1:00 A.M. The heater was turned off at 11:00 A.M. the same day and removed before the car departed from Chicago. The minimum temperatures at Chicago were:

> December 10—37° F.
> December 11—34° F.
> December 12—22° F.
> December 13—17° F.

Under the provisions of the Interstate Commerce Commission tariffs applicable, the carrier was required to use its discretion as to when to install and light the car heaters to protect the contents from extreme outside cold. I find that the carrier in good faith on the basis of the declining temperature correctly placed heater in the car and lighted it.

"VI. December 13, 1946, Plaintiff sent a Western Union telegram (which the Wabash Railroad freight agent at Chicago received at 1:40 P.M.) reconsigning the car to Leone Fruit and Vegetable Company, Pittsburgh, Pennsylvania, with instructions to maintain the same ventilation. Under this reconsignment the car of tomatoes was due in Pittsburgh at 7:45 P.M. December 15 for the market of December 16, a Monday. The car actually arrived at Pittsburgh at 6:30 P.M. December 17 for the market of December 18. The car was placed for unloading for the market of December 19.

"VII. The carrier used proper care in manipulating the ventilating devices of the car en route.

"VIII. Leone Fruit and Vegetable Company sold 672 lugs of the tomatoes in this car from December 19 to December 27, both inclusive, for a price ranging from 50¢ to $2.75 per lug, for a gross of $681.00.

"IX. On arrival at Pittsburgh, a United States Department of Agriculture inspector found the tomatoes to be 3% soft ripe and to have 10% decay. This inspection showed that only because of the decay were the tomatoes in the car not U. S. No. 2 grade

"X. I find that the carriers delay of two days in arrival at Pittsburgh and one day delay in placing the car for the market there did not materially injure the tomatoes. The damaged condition at destination was due almost entirely to the delay of the Plaintiff in (1) loading the tomatoes and having them inspected during two days; (2) in holding the car at Kansas City, Missouri, for two days; and (3) in holding the car at Chicago for more than six days. I further find that the prices received for these tomatoes on sales made from December 19 through December 27, a period of nine days, was not their value on arrival, and that such period of nine days was an unreasonably long time for the consignee (plaintiff's agent) to take in selling them."

■ It is apparent from these findings that the seven hundred lugs of tomatoes were in good condition and were U. S. No. 2 grade when they were delivered to carrier at San Benito, Texas. Appellee carrier issued its straight bill of lading for this carload of tomatoes and this suit was brought by shipper against appellee as the initial carrier under the provisions of the Carmack Amendment, 49 U.S.C.A. § 20, par. (11). The evidence shows that the tomatoes were in good condition when delivered to the carrier and were in bad condition when they arrived at Pittsburgh, Pennsylvania. Thus the shipper made out a prima facie cause of action of liability against the carrier. It is true that the trial judge in his findings of fact found, in effect, that the shipper was responsible for one day's delay in loading the car and two days' delay at Kansas City, and six days' delay in Chicago, but he further found that the carrier was responsible for two days' delay in shipment arriving at Pittsburgh, and one day's delay in placing the car, making a sum total of three days. He further found that the two days' delay in arrival and the one day's delay in plac-

ing the car in Pittsburgh, did not naturally injure the tomatoes, and that the damaged condition at destination was due *almost entirely* to the delay of the plaintiff.

We cannot construe these findings of the trial judge other than that the damaged condition of the tomatoes was due partly to the delay caused by shipper and partly to the delay caused by the carrier, and this being true there is no way for us to determine what part of the damage was due to the delay of the shipper and what part was due to the delay of the carrier.

■ The rule is that when the shipper shows that the commodities involved in an interstate shipment are in good condition when received by the carrier and were in bad condition upon the arrival at destination he is entitled to recover unless the carrier is able to show that the damage was caused by one of three causes, to wit: First, an act of God or a public enemy; second, inherent defects in the commodity; third, neglect and default of the shipper himself.

■ It has been held that a carrier may relieve itself from liability by proving generally that it exercised proper care and handled shipment in accordance with shipper's instruction, and, as to matters not covered by shipper's instruction, that it performed the duties of the carrier in a careful and prudent manner under all the circumstances, and without any neglect which caused or contributed to the damaged condition. Southern Pacific Company v. Itule, 51 Ariz. 25, 74 P.2d 38, 115 A.L.R. 1268. Since the evidence shows that the carrier did not handle this shipment in a reasonable and prudent manner, but caused the car to arrive two days late in Pittsburgh, and was another day late in placing the car, we cannot here say that the carrier discharged itself from liability. A finding that the damage was partly caused by delay for which shipper was responsible is not sufficient. The burden was upon appellee carrier to show that the damage was caused solely by the neglect of the shipper, or to show what amount of damage was attributable to shipper's negligence and what part was attributable to carrier's negli-

gence. Belcher v. Missouri, K. & T. Ry. Co., 92 Tex. 593, 50 S.W. 559; Galveston, H. & S. A. Ry. Co. v. Powers, 54 Tex. Civ.App. 168, 117 S.W. 459; St. Louis B. & M. Ry. Co. v. Murray, Tex.Civ.App., 40 S.W.2d 949; 9 Am.Jur. 867, § 731. This being a suit on a bill of lading where an interstate shipment is involved under the provisions of the Carmack Amendment, 49 U.S.C.A. 49, § 20, par. (11), the doctrine of contributory neglect does not apply. Hurley v. Illinois Central Railway Co., 221 Mo. App. 478, 282 S.W. 97; Schnell v. Vallescura, 293 U.S. 296, 55 S.Ct. 194, 97 L.Ed. 373.

However, there is no finding of the trial court as to the market value of the tomatoes in the damaged condition in which they were at the time they arrived in Pittsburgh, Pennsylvania. The only finding upon this point by the trial judge is, "I further find that the prices received for these tomatoes on sales made from December 19 through December 27, a period of nine days, was not their value on arrival, and that such period of nine days was an unreasonably long time for the consignee (plaintiff's agent) to take in selling them."

■ Appellant has not here presented a point properly briefed challenging the sufficiency of the evidence to support this finding by the trial judge. And even if we should disregard this finding of the trial judge we would still be without any measure of damage by which we could render judgment in favor of appellant, as there is no finding of the value of the tomatoes in their damaged condition. Appellant cites the case of Texas Mexican Railway Co. v. Slaughter, Tex.Civ.App., 122 S.W. 2d 1101, 1102, but that case is not in point because there the trial court made the following findings of fact:

"That the tomatoes, in the condition they were delivered to the consignee at destination, were unfit for the market upon the date of delivery and were not salable in the market of that date. And they had no reasonable market value.

"That the best price obtainable for the shipment of tomatoes at Baltimore following its arrival there and in the condition in which it was delivered by the carrier to the consignee, was the total sum of $415.-35. And plaintiff minimized his damages by salvage and sale for that amount."

Appellant did request the trial court to find as follows, to wit: "I further find that the sum of $681.00 was the best price obtainable for this car of tomatoes at the time and in the condition in which they actually arrived.".

This the trial court refused or failed to do, and appellant has not here presented any point based upon the court's failure to make such a finding. We are therefore unable to render judgment in favor of appellant, and are of the opinion that the ends of justice will best be met by reversing and remanding this cause for a new trial.

Accordingly, the judgment will be reversed and the cause remanded for a new trial.