## THOMPSON v. TANKERSLEY.
### No. 12164.

Court of Civil Appeals of Texas.
San Antonio.
Jan. 10, 1951.

Strickland, Wilkins, Hall & Mills, Mission, for appellant.

Magus F. Smith, McAllen, for appellee.

NORVELL, Justice.

We heretofore affirmed the judgment of the trial court upon condition that appellee file a remittitur. Both parties have filed motions for rehearing. The motion of appellant has been considered and is overruled. However, we are of the opinion that we erred in requiring appellee to remit a portion of the judgment awarded to him by the trial court. Appellee's motion is granted and the judgment appealed from is in all things affirmed. The following will be substituted in lieu of the original opinion as and for the opinion of this Court.

This is an appeal from a judgment for $2,576.75, rendered in favor of Bob Tankersley, the plaintiff below, and against Guy A. Thompson, Trustee for St. Louis, Brownsville and Mexico Railway Company, the appellant here. The action was based upon the alleged mishandling of a carload of tomatoes. The jury found, (1) "that the car of tomatoes involved in this suit at the time they arrived in Baltimore, Maryland, had sustained material damage after being received at Edcouch, Texas," the point of origin of the shipment; (2) "that such

material damage * * * was caused by the failure upon the part of (appellant) or a connecting carrier to use due care in the carrying of said car of tomatoes;" (3) that it was not established from a preponderance of the evidence that the damage to the tomatoes "was caused solely by reason of the condition and nature of said tomatoes at the time they were received at Edcouch, Texas, together with the lapse of time and the closing of the plugs and vents in transit to Baltimore;" (4) that "the fair and reasonable cash market value of said car of tomatoes on arrival in Baltimore, Maryland, in such damaged condition * * * was $83.25; and (5) that the fair and reasonable cash market value in Baltimore of said car of tomatoes at the time of their arrival in Baltimore had they arrived there without material damage would have been $2,960.

By his first nine points, appellant contends that the evidence shows that the damage to the tomatoes was caused by the action of appellee in delaying the arrival of the shipment at its final destination by use of numerous diversion orders, coupled with inherent vices in the tomatoes at the time of shipment and the shipping instructions given to the carrier to transport the car with vents closed and plugs in. It is also asserted that if some act of the carrier did contribute to the damage, the fact that the appellee wilfully delayed the arrival of the car to market by diversion orders should cast the burden upon appellee to show what portion of the damage was caused by the negligence of the carrier.

On December 15, 1945, at Edcouch, Texas, the appellee loaded refrigerator car MDT 5253 with 790 lugs of green wrapped tomatoes. The car was consigned to Bob Tankersley Produce Company at Little Rock, Arkansas. The car was subsequently diverted to St. Louis, Missouri, then to Cincinnati, Ohio, and finally to Carlisle Miles and Company at Baltimore, Maryland. The car arrived at its final destination on the morning of December 31, 1945, fifteen days after it had been loaded in Edcouch, Texas. The bill of lading contained the notation, "P. I. V. C. to destination," which was a shipping instruction to keep the plugs in and vents closed on the car until its arrival at destination.

The car was inspected on December 15, 1945, at Edcouch when loaded, again on December 26th at Cincinnati, and a third and fourth time in Baltimore on December 31st and January 4th. The original inspection showed that the tomatoes were mature green stock, "firm, smooth to fairly smooth, well formed to slightly misshapen; less than 1% decay; other grade defects affecting U. S. No. 1 Grade average approximately 20% most slightly bruised, growth cracks and misshapen; grade defects within tolerances for U. S. No. 2 grade." The tomatoes were graded approximately 80% U. S. No. 1 quality and as meeting Canadian Import requirements. The Cincinnati inspection showed that the upper four layers of lugs had shifted two to five inches. Eighteen lugs were visible with sides cut or jammed in three to five inches. Decay was estimated at 2%. The first Baltimore inspection disclosed a loading shift up to six inches with many lugs interspersed and all layers side-shifted out of alignment. There were forty damaged lugs in sight showing sides cut and mashed in. The lugs inspected showed up to 20% bruising. The certificate contained the following statement: "Decay varies, ranges from some samples, none, to others as high as 15% average for lot 4% Bacterial Soft Rot and an additional 1% Phoma Rot. Fully 15% defects, mostly surface scars with some puffy. Aside from this, stock not decayed firm. Packs tight. Inspection restricted to the accessible lugs 2 upper layers."

There was testimony in the record to the effect that there was no market on December 31, 1945, or January 1, 1946, as these were holidays at Baltimore. On January 2d, the market was dull and there were 122 cars of tomatoes on the track at Baltimore.

On January 3d, Carlisle Miles & Company wired as follows: "Have worked every available outlet our territory. Unable secure freight charges 5253. Consequently forced abandon carriers for your protection. Sorry, but nothing else could do." (The parties stipulated that telegrams and other papers would be "accepted

in evidence as if the person or persons who prepared such papers were present in court and testifying to the statements therein.")

The car was thereafter abandoned to the Pennsylvania Railroad Company as the delivering carrier, which eventually realized $83.25 gross from the car as salvage.

The last inspection of the car was made on January 4, 1946, at which time the following was noted: "An occasional to 12% average 7% phoma rot and 1% soft leaky decay. Practically all of the phoma rot is following small growth cracks of shoulder scars. 161 packages requiring recoopering attention of which 92 were made good."

It was shown that growth cracks result from breaks in the skin, resulting from rapid growth of the tomatoes. These breaks fill with scar tissue, but phoma rot tends to develop in and around these growth cracks. It was likewise shown that phoma rot and decay develop rapidly after the skin is broken or the tomato is bruised.

Appellee testified that he was an experienced shipper of vegetables and that tomatoes of the quality and condition of those involved in this suit would remain in good condition for a period of thirty days in the refrigerator car if properly handled.

■ There was evidence indicating that the tomatoes were in good condition when loaded, i. e., 80% U. S. Grade No. 1, balance within tolerance of U. S. Grade No. 2. Both the Cincinnati and Baltimore inspections showed that the lading had shifted, indicating that the car had been roughly handled by the carrier in transit. The jury could reasonably believe that this rough handling and consequent breaking of containers and bruising of the tomatoes caused them to decay and deteriorate in quality. It can not be said as a matter of law that the damage to the commodity was due solely to an inherent vice or defect in the tomatoes, coupled with the delays in transit caused by appellee's diversion orders. Thompson, Trustee, v. San Pat Vegetable Co., Tex. Civ.App., 207 S.W.2d 195; 13 C.J.S., Carriers, § 79, page 154.

■ Further, we are unable to agree with appellant's theory that if damage re-

sulted from both the acts of the carrier and the acts of the shipper, the burden was on the shipper in this particular case to show the proportionate damage to the cargo occasioned by the acts of the carrier, inasmuch as it appears that the arrival of the car at final destination was caused by the shipper's diversion orders. In the recent case of Lee Roy Crawford Produce Co. v. Thompson, Tex.Civ.App., 228 S.W.2d 344, 347, reversed by the Supreme Court upon other points, 233 S.W.2d 295, this Court said: "A finding that the damage was partly caused by delay for which shipper was responsible is not sufficient. *The burden was upon appellee carrier to show that the damage was caused solely by the neglect of the shipper, or to show what amount of damage was attributable to shipper's negligence and what part was attributable to carrier's negligence.* Belcher v. Missouri, K. & T. Ry. Co., 92 Tex. 593, 50 S.W. 559; Galveston, H. & S. A. Ry. Co. v. Powers, 54 Tex.Civ.App. 168, 117 S.W. 459; St. Louis, B. & M. Ry. Co. v. Murray, Tex. Civ.App., 40 S.W.2d 494 [949]; 9 Am.Jur. 867 § 731. This being a suit on a bill of lading where an interstate shipment is involved under the provisions of the Carmack Amendment 49 U.S.C.A., § 20, par. (11), *the doctrine of contributory neglect does not apply.* Hurley v. Illinois Central Ry. Co., 221 Mo.App. 478, 282 S.W. 97; Schnell v. [The] Vallescurra [Vallescura], 293 U.S. 296, 55 S.Ct. 194, 97 [79] L.Ed. 373." (Italics supplied.)

We overrule appellant's points Nos. One to Nine, inclusive.

■ By his tenth and eleventh points, it is contended that the jury's answer to Special Issue No. 4 has no support in the evidence. In answer to this issue the jury found that the market value of the tomatoes on arrival in Baltimore in their damaged condition was $83.25, which was the gross amount realized through salvage operations by the delivering carrier after the car was abandoned to it on January 3d.

We do not believe it material whether the issue is supported by the evidence or not, inasmuch as it conclusively appears that the tomatoes were out of grade upon

**266**

arrival at destination and could not be sold on the Baltimore market for as much as $383.23 (the amount of the freight charges) before the afternoon of January 3d. Upon the arrival of the shipment in Baltimore, numerous lugs were broken and many tomatoes were bruised. The contents of the car did not meet market specifications and could not be classified according to U. S. Standard grade specifications. The consignee acting in good faith could reasonably conclude that freight charges could not be realized from a sale of the contents of the car, particularly after attempts to sell the same had been made. The tomatoes were of little value and in unsalable condition, and the consignee could properly refuse to accept them. It was justified in abandoning the car to the carrier. 13 C.J. S., Carriers, § 178, page 357, § 273, page 622.

Appellee was entitled to recover what he would have received had the shipment arrived at destination in an undamaged condition. The measure of his recovery is the reasonable cash market value of the car of tomatoes at the time of their arrival in Baltimore had they arrived there without material damage (found by the jury to be $2,960) less the appellant's offset for freight charges ($383.25). The trial court's judgment of $2,576.75 was for the correct amount.

We overrule appellant's points Nos. Ten and Eleven.

By his twelfth and thirteenth points, it is contended that Special Issue No. 5 was improperly worded. This issue inquires as to the market value of the tomatoes had they arrived without material damage. The original inspection shows that 20% of the tomatoes did not meet U. S. No. 1 grade specifications and that some of the tomatoes had growth cracks. We think a fair interpretation of the issue is that it inquired about material damage occurring *after* loading and shipment, and that grade defects present at time of shipment were not to be considered as an element of damage. Other matters raised by these points have been adequately discussed in disposing of appellant's points Nos. One to Nine, inclusive.

We overrule appellant's points Nos. Twelve and Thirteen.

In our opinion appellant's brief discloses no reversible error, and the judgment appealed from is accordingly affirmed.