Guy A. THOMPSON, Trustee for International-Great Northern Railway Company, Appellant,

v.

BOB TANKERSLEY PRODUCE COMPANY, Appellee.

No. 12937.

Court of Civil Appeals of Texas.

San Antonio.

March 21, 1956.

Rehearing Denied April 18, 1956.

Sharpe, Cunningham & Garza, Brownsville, for appellant.

North, Blackmon & White, Corpus Christi, for appellee.

NORVELL, Justice.

The case involves two cars of tomatoes shipped by Bob Tankersley Produce Company from Jacksonville, Texas, to New York City. Judgment was rendered against Guy A. Thompson, Trustee for International-Great Northern Railway Company, the initial carrier, for the sums of $3,461.40 and $3,710.45, for damages sustained to the tomatoes contained in cars ART 23007 and ART 24336, respectively. As to both cars, the jury found that the tomatoes loaded therein "were in good condition at the time they were delivered to the carrier at Jacksonville, Texas." They also found that "late blight disease was present in the tomatoes" at the time of delivery to the carrier. The court defined "good condition tomatoes" as those "which are sufficiently free from disease and defects so that they would in reasonable probability arrive at destination without material deterioration, if carried under proper protective care."

▮ In our opinion the findings of the jury are not necessarily conflicting. It appears that late blight is a fungus or disease which during its early stages cannot be detected by the human eye alone. While the tomatoes were found to contain some late blight upon arrival in New York, this does not mean that they were not in good condition, as defined by the court, at the time they were shipped from Jacksonville, Texas, although the tomatoes at that time were necessarily affected by the fungus. The extent of the disease or blight must necessarily control in determining the question of "good condition." The Petition of United States of Brazil, The Pocone, D.C., 91 F.Supp. 964. Under the court's definition, the tomatoes at the time of shipment were not required to be in perfect condition and free from all defects. An example of imperfect yet good quality tomatoes is contained in the report of Thompson v. Tankersley, Tex.Civ.App., 238 S.W.2d 263. On the other hand, it seems well established that receipt in apparent good order by the carrier, coupled with the inability to ascertain hidden defects by visual inspection, does not preclude a holding, as a matter of law, that a commodity was not in good condition when received by the carrier. The Niel Maersk, 2 Cir., 91 F.2d 932; Albers Bros. Milling Co. v. Hauptman (The Nelson Traveler), 9 Cir., 95 F.2d 286; S. L. Shepard & Co. v. Agwilines, Inc., 4 Cir., 130 F.2d 67.

Appellant's position here is that the evidence conclusively shows that the tomatoes, by reason of the late blight imperfection were not in good condition when received by the carrier, and although other factors, such as violation of shipping instructions, may have contributed to the damages, the burden was upon the shipper to produce evidence whereby the damages could be apportioned as to causes. The appellee, on the other hand, asserts that the question of good condition upon receipt by the carrier was one of fact, which, being answered favorably to appellee, threw the burden of apportionment upon the appellant. Schnell v. The Vallescura, 293 U.S. 296, 55 S.Ct. 194, 79 L.Ed. 373; Lee Roy Crawford Produce Co. v. Thompson, Tex. Civ.App., 228 S.W.2d 344. Because of these opposing theories, neither side requested issues by which an apportionment of damages as to causes could be made, with the result that the entire loss must either be charged to the shipper or assessed against the carrier.

▮ As against the contention that a fact proposition was established as a matter of law contrary to a jury's findings, we must indulge every reasonable intendment in favor of the verdict. With that principle in mind we make the following statement:

Both shipments were receipted for as being "in apparent good order" by the carrier, as disclosed by the bills of lading.

The Inspection Certificate of the United States Department of Agriculture Production and Marketing Administration and Texas State Department of Agriculture, dated June 3, 1950, showed the following quality and grade of tomatoes loaded in Car ART 23007: "Stock mature green, firm, smooth to fairly smooth, well to fairly well formed; no decay; grade defects average within tolerance. Grade: U. S. Combination with approximately 80% U. S. No. 1 Quality, Meets Canadian Import Requirements." The Inspection Certificate (June 2, 1950) for Car ART 24336 was similar, except that the tomatoes in this car were graded "U. S. No. 1." In Chicago on June 7, 1950, the report of the Standard Inspection Service showed the following as to the contents of Car ART 23007: "Quality is mostly fairly good and good, packs and sizing good. Condition ranging from 90 to 100% mostly 100% green. None to 3 average less than 1% decay. Stock averages 18% minor defects, light body and light shoulder scars, blemishes 4%, prominent scars, spotted, discolored shoulder marks, mottled areas, balance clean, smooth and slightly ribby and ribby. Fairly well and well formed, flat and globe type."

The Chicago report on the contents of Car ART 24336 was similar, showing less than 1% decay and average of 18% minor defects.

In New York on June 14, 1950, the McCabe Inspection Service reported the contents of Car ART 23007 as being "Quality fair to poor, well to fairly well formed * * * . Fairly smooth, dull color and appearance, 6% serious, 50% minor scars and blemishes. Condition: 0 to 16% average 5% ripe, 12 to 32% average 20% decay, Bacterial soft rot and late Blight rot all stages." By a supplemental report, the McCabe Inspection Service gave the following breakdown between decay and blight: "The decay (Bacterial Soft Rot) ranges 4% to 32% average 14% decay. The late blight rot ranges from 0 to 16% average 6%." It also reported that a restricted top layer inspection showed 7% blight. "Fair to very poor quality."

The report on Car ART 24336 showed "4 to 12% average 26% decay, 0 to 8% average 3% late blight rot." By supplemental report it was stated that the decay (4 to 12% average 26%) "was chiefly soft rot with some lugs wet and leaking due to decay."

The McCabe reports designate two species of decay, namely, bacterial soft rot and late blight rot. The average attributed to late blight in Car ART 23007 was 6% (7% for top layer of lugs), and 3% for Car ART 24336.

While there was evidence that the presence of late blight could and often did lead to decay by means of bacterial rot, there also was evidence that the carrier had failed to follow the shipper's orders as to ventilation, and that, contrary to such instructions, the ventilating devices on Car ART 23007 were closed between Chicago and New York.

It appears that tomatoes may contain as high as five per cent decay at destination and still be in grade and the jury may have considered that the violation of shipping instructions contributed to the excess late blight decay in Car ART 23007, as there was evidence supporting this theory.

■ We think that, although some connection between late blight and bacterial rot be recognized, it cannot be said, as a matter of law, that the tomatoes were not in good condition when received by the carrier. Under the evidence, the jury could have properly concluded that although the tomatoes were not perfect and were affected somewhat with late blight, they, nevertheless, could with reasonable care have been transported to their destination without such decay developing to such extent as would have thrown the tomatoes out of grade. In other words, the jury's finding that the tomatoes were in "good condition" as defined in the court's charge has support in the evidence. This being true, the burden of apportionment between causes fell upon the carrier. Schnell v. The Vallescura, 293 U.S. 296, 55 S.Ct. 194, 79 L.Ed.

373; Lee Roy Crawford Produce Co. v. Thompson, Tex.Civ.App., 228 S.W.2d 344; Thompson v. Tankersley, Tex.Civ.App., 238 S.W.2d 263. The foregoing disposes of appellant's points Nos. 1 to 5, inclusive.

By his remaining points appellant asserts that the court in submitting its issues as to alleged violations of the shipper's instructions, erred in placing the burden of proof upon the carrier. The wording of Special Issue No. 12 was as follows: "Do you find from a preponderance of the evidence that the position of the vents on Car ART 23007, between Decatur, Illinois and Harsimus Cove, New Jersey, was *not* a cause of the deteriorated condition of said tomatoes in New York City?" A similar issue (No. 20) was submitted as to Car ART 24336. Appellant also complains that these issues were not followed by inquiries as to proximate cause.

As we understand appellant's argument under these points, it is predicated upon the primary proposition that the tomatoes were not delivered to the carrier in "good condition." If this premise be accepted, and damage results from such lack of "good condition" through an inherent defect in the quality of the commodity, then it would be necessary for the shipper to show some act of negligence on the part of the carrier which proximately caused an ascertainable portion of the deterioration of the commodity while in transit. Memphis & Charleston R. Co. v. Reeves, 10 Wall. 176, 77 U.S. 176, 19 L.Ed. 909; Galveston, Harrisburg & San Antonio Ry. Co. v. Licata, Tex.Com.App., 280 S.W. 540. In the present case, however, the appellant failed in the establishment of the underlying premise of his theory. The finding of "good condition" supports a judgment for appellee upon the contract evidenced by the bill of lading, and it was unnecessary for appellant to prove specific negligence on the part of the carrier proximately causing injury. In view of this circumstance, appellant's points present no reversible error. These issues were evidently intended as defendant's issues, under Section 1(b) of the bill of lading, which provides that, "Except in case of negligence of the carrier or party in possession (and the burden to prove freedom from such negligence shall be on the carrier or party in possession), the carrier or party in possession shall not be liable for loss, damage or delay * * * resulting from a defect or vice in the property." Appellant, however, seeks to treat them as plaintiff's issues predicated upon the theory that the tomatoes were not delivered to the carrier in "good condition." In view of the jury's findings upon the "good condition" issues, appellant is in effect objecting to the wording of issues which plaintiff need not rely upon to support the judgment. Lee Roy Crawford Produce Co. v. Thompson, Tex. Civ.App., 228 S.W.2d 344; Thompson v. Lee Roy Crawford Produce Co., 149 Tex. 357, 233 S.W.2d 295.

Appellee's cross-point asserting that the damages sustained should be measured by the New York market of June 15th, rather than that of the 13th, is overruled. We think the evidence demonstrates that the two cars of tomatoes could have been placed upon the June 13th market by the exercise of reasonable diligence. Chicago, Milwaukee & St. Paul Ry. Co. v. McCaull-Dinsmore Co., 253 U.S. 97, 40 S.Ct. 504, 64 L.Ed. 801; St. Louis & San Francisco Ry. Co. v. White, 110 Tex. 585, 222 S.W. 963.

The judgment is affirmed.