**Kennedy & Kratzer, Inc., Plaintiff-Appellee, v. Chicago, Burlington & Quincy Railroad Company, Defendant-Appellant.**

**Gen. No. 52,566.**

First District, Third Division.

February 20, 1969.

T. G. Schuster, D. R. Sterling, and G. W. Phillips, of Chicago (Eldon Martin, of counsel), for appellant.

Louis B. Tishler, Jr., and Earl B. Slavitt, of Chicago (Ressman & Tishler, of counsel), for appellee.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

Plaintiff sues to recover for damages to a shipment of potatoes incurred while in transit on defendant's railroad. Liability was conceded and the amount of damages was determined by the court without a jury. The court entered judgment for $1,300.45 based on his finding that plaintiff had properly abandoned the shipment and was entitled to the market value of the potatoes as of the time of delivery to the carrier less freight charges. Defendant contends that this was not the proper measure of damages, that plaintiff should have accepted the shipment, sold the potatoes for the best price it could obtain and made its claim for the difference between that and the market value of the potatoes if delivered in good condition in normal course. The facts follow.

On January 25, 1966, plaintiff shipped a carload of 500 sacks (100 pounds each) of North Dakota Round Red potatoes to its sales agent in Chicago via defendant railroad. The shipment was inspected at origin by a repre-

sentative of the United States Department of Agriculture and graded as U. S. No. 1. It was delayed seven days in transit and upon arrival in Chicago was given a doorway inspection by another inspector employed by the Department of Agriculture. Freezing damage was detected in some of the bottom layer sacks and because of that damage the shipment was no longer graded U. S. No. 1.

Plaintiff's agent Wilbur Kratzer testified that the market value of U. S. No. 1 North Dakota Round Red potatoes at the time in question was $3.25 per cwt., that it was his custom to deal in carload lots of No. 1 potatoes only, that he attempted to sell the carload but was unable to do so and that as a result the damaged potatoes were worth nothing to him. He further testified that it is the custom of the trade in Chicago for a carload lot dealer to abandon goods to the carrier if their condition is so bad he is unable to get a marketable value. He further testified that five days after the potatoes arrived he received an offer of $2.25 per sack for the entire carload "as is." He called a claim agent of the defendant and asked whether defendant would reimburse him for his loss if he sold the potatoes at $2.25 per sack. The agent was not authorized to assure Kratzer that defendant would reimburse him and refused to settle the claim over the telephone. Kratzer then notified defendant by telephone and in writing that he was abandoning the carload.

Defendant introduced Department of Agriculture market reports which showed that on February 4, 1966, U. S. No. 1 North Dakota Red potatoes were selling in Chicago for $3.15 to $3.20 per cwt. David Brown, manager of defendant's loss and damage department, testified that the railroad had no facilities of its own to handle the sale of an abandoned carload of potatoes and that a broker was engaged to sell the carload for salvage value. The broker separated the bags and sold 127 bags which were damaged for 50 cents per bag and 373 bags which were not damaged for $1.50 per bag. He testified that the dif-

ference in market price and the price obtained was due to the fact that when railroads, by reason of abandonment by the consignee, are forced to sell through salvage channels they always get a lower price. After the cost of the sale was deducted the net salvage value realized amounted to $435.70. The trial court found the value of the potatoes in good condition to be $3.25 per sack, or $1,625, and awarded plaintiff that amount less the unpaid freight charge of $324.55 and entered judgment against defendant for $1,300.45.

■ The law is well settled that the measure of damages for goods injured in transit is the difference between the fair market value of the goods at the time and place of delivery in their injured or deteriorated condition and the fair market value of such goods if delivered without injury. Mirski v. Chesapeake & O. Ry. Co., 31 Ill2d 423, 202 NE2d 22; Gulf, Colorado & Santa Fe R. Co. v. Texas Packing Co., 244 US 31, 6 ILP, Carriers, § 200. This rule contemplates that the consignee has accepted delivery of the goods and has not abandoned them to the carrier. If the consignee has rightfully abandoned the goods, he may recover the full value of the shipment less freight. The issue for determination is whether plaintiff had a right to abandon the goods to defendant after it discovered they were damaged.

■ A consignee may rightfully abandon to the carrier goods damaged in transit to such an extent that they are virtually worthless. Pennsylvania R. Co. v. John Anda Co., 131 Ill App 426; Beck v. Chicago, M. & St. P. Ry. Co., 39 SD 297, 164 NW 74; Thompson v. Tankersley (Tex Civ App), 238 SW2d 263 (1951). But a consignee has no right to abandon a shipment of goods which has been only partially damaged and which retains a substantial value. Denver-Chicago Trucking Co. v. Republic Drug Co., 134 Colo 586, 306 P2d 1076; 2 Hutchinson on Carriers, § 1365; Miller's Law of Freight Loss & Damage Claims, pp 325–26; 13 Am Jur2d, Carriers, § 427; 13

CJS, Carriers, § 273. This rule imposes on the consignee the duty to dispose of partially damaged goods. Through normal market channels the plaintiff, as admitted by its agent, could have sold the entire carload of potatoes at $2.25 per sack, or $1,125. Defendant was able to realize only $435.70 for the same carload.

■ Plaintiff acknowledges that this rule is as we have stated it, but the evidence establishes that the custom and procedure of the market was for dealers in carload lots to abandon goods to the carrier if upon arrival they were *"so damaged as to have no value to the dealer."* That is the only evidence as to custom and it does not alter the rule, except as it may relate to the claim that the potatoes were of no value to the dealer. This is not borne out by the evidence. On behalf of plaintiff, Kratzer testified that the value of the potatoes "was nothing as a car lot, since I could not find customers for it." But he also testified that before he abandoned the potatoes to the carrier, he had an offer of $2.25 per sack for the carload. He did not accept the offer because one of defendant's agents who had not seen the carload would not assure him of reimbursement for the loss. This did not justify abandonment since the law gave plaintiff the legal right to be so reimbursed. The potatoes were in fact still the consignee's. A finding that the potatoes were substantially worthless or of no value to plaintiff, as it contends, is contrary to the manifest weight of the evidence.

The judgment is reversed and the cause remanded for new trial in order that there may be a finding of damages in accordance with the rule hereinbefore stated and for such other and further proceedings as are not inconsistent with the views herein expressed.

Judgment reversed and cause remanded with directions.

SULLIVAN, P. J. and DEMPSEY, J., concur.